**STATE of Iowa, Appellee,**

v.

**Walter SMITH, Jr., Appellant.**

**No. 56513.**

Supreme Court of Iowa.

April 14, 1976.

John C. Wellman, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Jim P. Robbins, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REES and HARRIS, JJ.

LeGRAND, Justice.

A jury found defendant guilty of first degree murder in shooting his wife, Judy Smith, to death on July 21, 1972. He appeals, and we affirm the judgment sentencing him to a life term in the penitentiary.

We relate the facts which precipitated this crime. Defendant had been separated from his wife for some time, although the record reflects they maintained a friendly relationship in spite of their differences. After their separation, Judy shared an apartment in Des Moines with Linda Brown. Several evenings prior to the fatal shooting, Miss Brown and Judy were in a tavern called So's Your Mother, where they met Keith Jackson, whom neither had previously known. When they left the tavern, Keith Jackson accompanied Judy to her apartment. At that time, arrangements were made for him to see her again the following night.

Jackson returned to the apartment the next night as planned. Linda Brown was also there as was Jimmy Western, Linda's boyfriend. The four played records, drank some wine, and then each couple retired to a separate bedroom. The men intended to stay all night.

Shortly after Judy and Keith Jackson had retired to their bedroom, defendant entered the apartment and shot his wife to death. He also wounded Keith Jackson.

A short time before the shooting, defendant had been on the back porch of the apartment from which he could see into the living room. He explained his presence there by saying his wife had left a message for him to stop by her apartment that night. From his vantage point, defendant saw Judy and Keith Jackson lying on the floor together. He also heard them discuss going to bed. Although the record is not entirely clear, we believe it is fair to say he saw them go into the bedroom and get into bed. Judy was attired in a babydoll nightgown. Jackson was clad only in shorts and a T-shirt. Defendant assumed, not without cause, the two were about to engage in an act of sexual intercourse. Distraught by

this event, defendant left his place of observation, returned to his car a block or so away, and got a gun. He then returned to the apartment, and the shooting followed.

Defendant raises two issues on this appeal. First, he says the evidence was not sufficient to submit first degree murder to the jury. Next, he says there was such jury misconduct as to deny him a fair trial. We discuss these issues in the same order as raised by defendant.

I. Defendant's claim the evidence is insufficient to support a charge of first degree murder is nothing more than an argument that the "unwritten law" as explained in *State v. Thomas,* 172 Iowa 485, 490–492, 154 N.W. 768, 769–770 (1915) removes the elements of malice and premeditation from the case. With these elements gone, defendant insists first degree murder should not have been submitted for jury consideration.

■ Defendant concedes the general rule is that one who arms himself with the express purpose of shooting another cannot ordinarily claim the elements of first degree murder are lacking. The use of a deadly weapon accompanied by an opportunity to deliberate is evidence of malice, deliberation, premeditation and intent to kill. *See State v. Lass,* 228 N.W.2d 758, 766 (Iowa 1975); *State v. Hall,* 214 N.W.2d 205, 210–211 (Iowa 1974).

In the present case, however, we are urged to hold the provocation under which defendant acted—observing his estranged wife in an apparent act of adultery—made a first degree verdict unsupportable.

The main thrust of defendant's appeal is that the failure of the trial court to instruct specifically on this provocation as sufficient to reduce the charge to manslaughter is error.

We agree that *State v. Thomas, supra,* justifies such an instruction under a certain factual situation. This rule was recognized but held inapplicable in *State v. Rutledge,* 243 Iowa 179, 192, 47 N.W.2d 251, 259 (1951).

We doubt very much if defendant is entitled to the benefit of such a rule under these circumstances where, instead of acting immediately in the heat of passion, he removed himself from the scene, went to his car for a gun, and returned once more with the express purpose of inflicting fatal punishment on his wife.

■ However, we need not decide that question here. Manslaughter was submitted to the jury as an included offense under proper instructions, including this statement on provocation:

"A provocation is adequate to reduce the offense from murder to manslaughter whenever it is calculated to excite the passion beyond control, and is such as would, in the mind of the average just and reasonable man, stir up resentment likely to cause violence endangering life, or is such as would naturally tend to disturb and obscure the reason and lead to action from passion rather than from judgment."

Defendant made no objection to this instruction, either before it was submitted to the jury or in his motion for new trial. Neither did he ask for an expanded instruction to include the specific matter about which he now complains.

■ When an instruction is correct as given but is not as complete or explicit as a party would like, he must request an additional instruction designed to remedy the defect before the jury is charged. No request was made here nor was any objection raised until this appeal. Under such circumstances, there is nothing for us to review. *See State v. Hackett,* 197 N.W.2d 569, 572 (Iowa 1972); *State v. Cox,* 196 N.W.2d 430, 432 (Iowa 1972).

II. The second issue relates to jury misconduct and is based upon an affidavit by one of the jurors setting out certain discussions which were had in the jury room and certain conduct on the part of jurors which she says influenced her verdict.

Apparently the jury stood eleven to one in favor of a first degree verdict for some time. The reluctant juror stated she was

subjected to persuasion, ridicule, and verbal abuse. Ultimately she capitulated.

■ Differences of opinion in the jury room cannot be avoided, and courts properly are reluctant to intrude upon the give-and-take discussions, frequently heated and sometimes offensive, which lead to a verdict. They are a part of the jury process. Such matters are said to inhere in the verdict and cannot be used to impeach it. *State v. Feddersen,* 230 N.W.2d 510, 513–514 (Iowa 1975) and *State v. Berch,* 222 N.W.2d 741, 747–748 (Iowa 1974).

■ When the jury returned its verdict in this case, the individual jurors were given an opportunity to repudiate it. None did so. Under our decisions, there is nothing to warrant a reversal.

■ We have not disregarded the fact that some of the jury conduct had racial overtones. Defendant and Jackson are blacks. Judy Smith was white. This was the subject of jury comment. The trial court has broad discretion in determining if alleged jury misconduct is prejudicial. We do not interfere with that discretion unless there is a clear showing of abuse. *State v. Feddersen, supra,* 230 N.W.2d at 514. *See also* § 787.3, The Code, and ABA Standards, Trial by Jury, § 5.7 (Approved Draft, 1968).

Defendant also claims the verdict was arrived at by lot. We find no basis for that complaint.

III. Finding no reversible error, the judgment is affirmed.

AFFIRMED.