**Randall HARRIS and Ann Harris,**
**Appellants,**

v.

**DEERE & COMPANY, Appellee.**

**No. 60075.**

Supreme Court of Iowa.

March 22, 1978.

Robert F. Leonard, Sidney, for appellants.

Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee.

Considered by MOORE, C. J., and REES, UHLENHOPP, HARRIS and McCOR-MICK, JJ.

UHLENHOPP, Justice.

We must decide in this appeal whether plaintiffs Randall and Ann Harris, spouses, are entitled to a new trial against defendant Deere & Company because of claimed jury misconduct.

Randall Harris was the hired man of Harold and Ronald Gruber on a farm. He sustained severe injuries when, without turning off the power, he swung his leg over the front of a silage unloading wagon to push down jammed silage. He became entangled in the beaters in the wagon.

Harrises sued Grubers and also Deere, which manufactured the wagon. At trial they settled with Grubers for $20,000 and

proceeded against Deere. In its instructions the trial court informed the jury that Harrises and Grubers had settled. Following 21 hours of deliberation spread over four days, the jury returned a ten-to-two verdict for Deere. After the trial court denied a motion for new trial, Harrises appealed.

In their appeal Harrises rely on jury misconduct in discussing the following subjects during deliberations: settlement with Grubers for $20,000, the right of Randall Harris to receive social security benefits, whether awarding Randall Harris a substantial sum would be in his best interest, and the personal experience of one of the jurors in overcoming a polio disability. Harrises also rely on the act of a juror in looking up the words "control" and "lever" in a dictionary.

Harrises presented the affidavits of five jurors. As to discussion of the settlement, a juror stated in an affidavit:

One of the jurors informed the other jurors that he had had a conversation with Harold Gruber, one of the parties, after the selection of the jury and that Mr. Gruber had informed him that the matter between the Grubers and Harris' had been settled and the amount thereof was $20,000.00.

The other affidavits do not contain this statement.

As to social security benefits, a juror stated in an affidavit:

The matter of Randall Harris drawing social security disability benefits was brought up and discussed by the jurors.

All of the other four juror affidavits contain such a statement.

As to whether awarding a substantial sum would be in the best interest of Randall Harris, a juror stated in an affidavit:

The fact that if Randall Harris received a substantial sum of money he may quit his job and that this would not be to his best interest was also brought up and discussed.

This statement also appears in all four of the other affidavits.

As to the experience of a juror in overcoming polio, a juror stated in an affidavit:

It was also brought up and discussed in the jury room that one of the members of the jury had had polio as a young person and that this individual had gotten over his disability and that Randall Harris could work and overcome his.

Two of the other jurors' affidavits contained this statement.

As to use of a dictionary, one of the jurors stated in an affidavit:

On the morning of Thursday, June 17, 1976, the date the verdict was returned and prior to going to the jury room for deliberations I requested and received from the Clerk of Court a dictionary and I, before entering the jury room looked up the words "control" and "lever" and I then took the dictionary to the jury room and laid the same on the table and informed the other jurors that I had looked up the words.

The other affidavits do not contain such a statement.

■ I. Trial courts have broad discretion in ruling on motions predicated on jury misconduct. We stated in *State v. Houston*, 209 N.W.2d 42, 44 (Iowa):

Trial court has broad discretion in determining whether evidence of claimed jury misconduct justifies a new trial. . . . Trial court's holding will not be set aside on appeal except upon showing an abuse of such discretion.

See also *State v. Lass*, 228 N.W.2d 758, 771 (Iowa) ("Trial courts have broad discretion in these matters."); *State v. Berch*, 222 N.W.2d 741, 747 (Iowa) ("We have repeatedly held trial courts have broad discretion in determining whether evidence of claimed jury misconduct justifies a new trial.")

■ II. Motions based on alleged jury misconduct involve two basic problems: the procedural problem of proving the facts as to what happened, and the substantive problem of the effect of the facts which are proven. As to the first problem, jurors may give evidence of objective facts as to what actually transpired in or out of the jury

room bearing on misconduct. *Wright v. Illinois & Mississippi Tel. Co.*, 20 Iowa 195, 210 ("as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, or game of chance or other artifice or improper manner"). But jurors' statements of a subjective nature as to what influenced their decision are incompetent. Id. ("as that the juror did not assent to the verdict; that he misunderstood the instructions of the court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast"). See Comment, 45 Iowa L.Rev. 649; Note, 10 Drake L.Rev. 126; Rule 606(b) and Advisory Committee Note, Federal Rules of Evidence (more restrictive federal rule); Rule 301, Model Code of Evidence; Rule 606(b), Uniform Rules of Evidence; 8 Wigmore, Evidence, §§ 2352–2354 (McNaughton Rev. Ed.); McCormick, Evidence, § 68 at 148–149 (2nd Ed.).

III. As to the second problem, once the objective facts are proven as to what transpired relief is available only if two elements appear. First, the acts or statements complained of must exceed tolerable bounds of jury deliberation, that is, they must constitute jury misconduct. Of necessity jurors have considerable latitude in their deliberations, and conduct or occurrences which are within tolerable limits are said to "inhere in the verdict" or constitute no ground for "impeachment of the verdict." This court stated in *Long v. Gilchrist*, 251 Iowa 1294, 1299, 105 N.W.2d 82, 85:

We cannot consider the mass of the back and forth argument in the jury room, entered into prior to the final verdict. All such matters inhere in the verdict. A juror cannot impeach his own verdict. If we were to analyze and review and sometimes reject as misconduct all arguments in a jury room, there would never be a finality as to jury verdicts. Even if the argument oftentimes roams far afield, it ultimately inheres in the unanimous verdict.

See also *State v. Houston*, supra, 209 N.W.2d 42, 45 (Iowa) ("Historically, we have considered such situations with a bemused but limited tolerance for the ingenuity of jurors and the realization a rigid approach would result in interminable litigation."); *State v. Lass*, supra, 228 N.W.2d 758, 771 (Iowa) ("As a practical matter, courts cannot be too strict on jury discussions or few verdicts could stand."); *State v. Smith*, 240 N.W.2d 693, 696 (Iowa) ("Differences of opinion in the jury room cannot be avoided, and courts properly are reluctant to intrude upon the give-and-take discussions, frequently heated and sometimes offensive, which lead to a verdict. They are part of the jury process. Such matters are said to inhere in the verdict and cannot be used to impeach it.").

The other element is embodied in the rule, "In order to justify a new trial on the basis of misconduct of jurors it must appear the misconduct was calculated to, and it is reasonably probable it did, influence the verdict." *In re Estate of Cory*, 169 N.W.2d 837, 845 (Iowa). This rule, like the others we have stated, applies in both civil and criminal cases. *Fischer, Inc. v. Standard Brands, Inc.*, 204 N.W.2d 579 (Iowa); *State v. Houston*, supra, 209 N.W.2d 42 (Iowa); *Giltner v. Stark*, 219 N.W.2d 700 (Iowa); *State v. Feddersen*, 230 N.W.2d 510 (Iowa).

IV. The ultimate question for us is whether the trial court abused its discretion in overruling the motion for new trial based on the jurors' affidavits. We will assume arguendo under the first problem that the affidavits are competent to prove what they state—that they establish the facts related in them. We must then confront the two elements under the second problem. Was the jury's conduct misconduct or was it within tolerable limits? If it was misconduct, does a reasonable probability appear

that it influenced the verdict? The parties have cited a number of our decisions, which appear fairly representative of our cases on this subject. For guidance in deciding this case, we review those decisions chronologically.

The first decision, decided in 1866, is *Wright v. Illinois & Mississippi Tel. Co.*, supra, 20 Iowa 195. That case involved a quotient verdict, which this court held required reversal of an order denying a new trial. We have no indication in the present case, however, of a verdict by lot, aggregate, or quotient.

Next is *Griffin v. Harriman*, 74 Iowa 436, 438, 38 N.W. 139, 140. During deliberations a juror made statements on a material issue in the case as shown by affidavit: " 'J. P. Smith, who was a trial juror on said cause, after he got in the jury-room to deliberate on a verdict, stated to the jury that he was personally acquainted with the premises in controversy, and that the land was very poor land, to his personal knowledge; and he used said alleged fact in argument, and for the purpose of influencing the jury to find for plaintiff in the sum of twenty-five dollars; and said fact influenced him [affiant] in rendering a verdict as rendered in this cause.' " Two other affidavits were to the same effect. This court reversed a trial court order denying a new trial.

In 1900 this court decided *Wilberding v. City of Dubuque*, 111 Iowa 484, 486–487, 82 N.W. 957, 958. The court affirmed the trial court's grant of a new trial and stated inter alia, "We find that the court might well have based its action upon the alleged misconduct of the juror Stewart, who stated to his fellow jurors, while in the jury room, what he claimed to be facts within his personal knowledge relating to the sidewalk in question. In other words, he appears in the dual capacity of a juror and a self-constituted witness for the defendant."

Relying on *Wilberding*, this court affirmed a new-trial grant in *City National Bank v. Steele*, 220 Iowa 736, 737, 263 N.W. 233. During deliberations, "the juror, Walter Berst, stated that he had driven this same curve a great many times at sixty-five

miles per hour without any risk, and another juror said she had driven it many times and that it was not dangerous . . . ." This court remarked, "This statement of the juror had a direct bearing on the issue of reckless driving . . . ."

On the other hand, the court affirmed the denial of a new trial in *Keller v. Dodds*, 224 Iowa 935, 944, 277 N.W. 467, 472. The jury talked about insurance on the truck involved in the case. This court pointed out that trucks must be insured as the jury must be presumed to know, saying that "it hardly seems reasonable that this court should adopt a policy or lay down a rule of law that in every instance wherein the subject [of insurance] was talked over in the jury room, and especially where the talk was in reference to the law that every juror is presumed to know, that the same should be construed as prejudicial misconduct . . . ."

This court also affirmed denial of a new trial in *Nicholson v. City of Des Moines*, 246 Iowa 318, 67 N.W.2d 533. The motion contained several grounds: one was that the jurors discussed which party was more negligent (from which the defendant contended the jury applied comparative negligence); another was that a juror stated social security for the deceased would have been about $85 a month (a general subject discussed in the present case); and a third was the manner in which the jurors arrived at the amount of their verdict. This court held the jury could not impeach its verdict by relating these matters.

In 1957 the court decided *Mongar v. Barnard*, 248 Iowa 899, 909, 82 N.W.2d 765, 772. There the trial court overruled a motion based on two grounds of jury misconduct, and this court upheld that part of the ruling. One ground was the reading in the jury room of a bar association pamphlet entitled "You're on the Jury." This court concluded that nothing which appeared in the pamphlet affected the verdict either way. The second ground, on conflicting affidavits, was that a juror stated "he had owned a truck like that driven by plaintiff and it could not travel 50 miles per hour

when loaded with eight tons of crushed rock." This court upheld the trial court's discretion in overruling the second ground.

Soon after *Mongar*, this court decided two more cases on the subject: *Hicks v. Goodman*, 248 Iowa 1184, 85 N.W.2d 6, and *Stites v. Des Moines Transit Co.*, 249 Iowa 185, 85 N.W.2d 905. In *Hicks* a delivery-man fell down an open stairway at a building site. A juror's affidavit stated that a transportation company manager who served on the jury told the jury he would fire an employee who did not first go and look over the site and that the juror was impressed by the manager's superior knowledge. This court held the trial court acted within its discretion in denying a new trial. In *Stites* the jurors' affidavits showed a juror stated a member of his family had been injured in a manner similar to the plaintiff and made no claim, another juror stated she would not believe the doctor-witness as the doctor had performed an unsuccessful operation on her husband, and a third juror stated the defendant transit company was operating at a loss and should not be held to the standard of highest degree of care. This court held the trial court did not abuse its discretion in denying a new trial.

The court reversed for abuse of discretion and ordered a new trial in *Bashford v. Slater*, 250 Iowa 857, 867, 96 N.W.2d 904, 910. From an exhibit in evidence, the jurors assumed defendant had liability insurance of $50,000. The jury was concerned with the items which would add up to that sum, rather than with liability. The verdict was for $49,864. This court said additional statements "make clear that other matters outside the record were considered, such as earnings, life expectancy, etc., and that the court's instructions were not followed."

The court affirmed denial of a new trial in *Long v. Gilchrist*, supra, 251 Iowa 1294, 1299, 1301, 105 N.W.2d 82, 85, 86. Evidence was introduced that the plaintiff-driver drove 75 miles per hour at the time of the mishap. The jury foreman drove his car at that speed when transporting jurors to the court-authorized view of the scene. In de-liberations the foreman stated he had done so and inquired "if anyone noticed anything unsafe about the speed at which he traveled or felt unsafe in any manner or degree." This court stated that "the alleged misconduct was not of such type to justify reversal."

The parties next cite *State v. Brown*, 253 Iowa 658, 113 N.W.2d 286. There the defendant claimed the jury misconceived the law on parole. This court concluded the matter inhered in the verdict, and affirmed denial of a new trial.

Another criminal case is *State v. Little*, 164 N.W.2d 81, 83 (Iowa). The claimed misconduct was a juror's unauthorized view of the scene. This was discussed in the jury room and was a matter of some importance because of the weight to be given to the testimony of a witness. This court held the trial court acted within its discretion in denying a new trial, because the affidavits fell short of reasonable probability the misconduct affected the verdict. The court said, "Although both affidavits stated the matter was discussed in the jury room, neither undertook to give the substance of such discussion. Certainly if this discussion had been prejudicial to defendant, it would have been set out in the affidavits."

The next case, a will contest, involved a problem which we have here—use of a dictionary. *In re Estate of Cory*, 169 N.W.2d 837 (Iowa). A juror procured dictionary definitions of "undue" and "undue influence" and read them in the jury room. This court cited an annotation (54 A.L.R.2d 738) for the statement that most cases find absence of prejudice where jurors use books. The court also cited the *Mongar* case which we have already considered (pamphlet "You're on the Jury"—no new trial), as well as Fagen *Elevator v. Pfiester*, 244 Iowa 633, 642, 56 N.W.2d 577, 582 (book "The Iowa Drivers' Guide"—no new trial). In *Fagen* this court said, "The situation here is somewhat like that where jurors consult a dictionary during their deliberations. This has been held not to require a new trial." In *Cory* this court therefore upheld the trial court's exercise of discretion in refusing a new trial.

The parties' next case involves assault with intent to commit murder, *State v. Jackson*, 195 N.W.2d 687 (Iowa). The defendant had been previously convicted of a murder and at the present trial admitted on cross-examination that he had been previously convicted of a felony. When the jury retired a juror stated the defendant had been convicted of a murder. The foreman sent a note to the judge asking the nature of "the felony." The judge had the jurors brought into the courtroom and instructed them not to consider the previous conviction, and the jurors did not thereafter mention it. This court upheld denial of a new trial; the jury discussion was not such as to have probably affected the verdict.

The parties cite ten of our quite recent cases. With one exception they uphold the trial courts' exercise of discretion. The first is *Fischer, Inc. v. Standard Brands, Inc.*, supra, 204 N.W.2d 579 (Iowa). One of the jurors conducted an experiment with a gasoline engine, holding the exhaust near combustible material. No combustion resulted, which confirmed the defendant's contention at trial. The juror reported his results to the jury. This court held the trial court abused its discretion in not awarding a new trial; a reasonable likelihood appeared that the experiment affected the verdict.

Another case is *State v. Houston*, supra, 209 N.W.2d 42 (Iowa). The jurors turned off the lights and tried to determine nighttime visibility while looking through window glass—activity relating to testimony of a witness. We upheld the trial court's denial of a new trial, for want of reasonable probability the experiment influenced the verdict.

A third recent case is *Osterfoss v. Illinois C. R. R.*, 215 N.W.2d 233 (Iowa). A juror twice visited the scene of a railroad crossing. We upheld the denial of a new trial on the ground that no reasonable probability appeared the verdict was affected. A case decided at the same sitting as *Osterfoss* is *Turner v. Jones*, 215 N.W.2d 289 (Iowa). That case only obliquely involves our present problem (failure on voir dire to ascertain that prospective juror was opposing attorney's office cleaning-person).

A 1974 criminal case involved a juror's affidavit purporting to show she was induced by other jurors to find the defendant guilty. *State v. Berch*, supra, 222 N.W.2d 741 (Iowa). We upheld the trial court's denial of a new trial on the basis that the matter inhered in the verdict. Another criminal case at the time involved a juror's relating personal experiences of viewing hypoglycemia and diabetic attacks—trial witnesses disagreed as to whether the defendant suffered from low blood sugar. *State v. Lass*, supra, 228 N.W.2d 758 (Iowa). We held the trial court acted within its discretion in denying another trial. A 1975 case involved three charges: a juror's possessing prejudicial knowledge which was not imparted to other jurors (he was excused so that the matter was immaterial); jurors' riding by Rienow Hall, the scene of the homicide (no reasonable probability shown result was affected); and jurors' imbibing in a cocktail at dinner after submission of the case (condemned but no showing verdict influenced). We upheld denial of a new trial. *State v. Hall*, 235 N.W.2d 702 (Iowa), cert. den. 98 S.Ct. 66, 54 L.Ed.2d 79 (U.S.).

The next decision cited by the parties is *State v. Smith*, supra, 240 N.W.2d 693, 696 (Iowa). A juror claimed she was subjected to persuasion, ridicule, and verbal abuse, and also that some jury conduct had racial overtones. We upheld denial of a new trial saying, "The trial court has broad discretion in determining if alleged jury misconduct is prejudicial. We will not interfere with that discretion unless there is a clear showing of abuse."

Next the parties cite *Moose v. Rich*, 253 N.W.2d 565, 570 (Iowa). The jurors discussed whether the defendant had insurance. We held this not a good ground for new trial saying, "Jurors are presumably aware of the facts of everyday life and insurance is certainly within the limits of such awareness." Following *Moose* is *Anderson v. Goodyear Tire & Rubber Co.*, 259 N.W.2d 814 (Iowa). We there held a party

could not show the jury misunderstood the instructions. This would involve jurors' statements of a subjective nature as to what influenced the verdict.

The final decision is *Parker v. Tuttle*, 260 N.W.2d 843, 849 (Iowa). The jury had a pamphlet entitled "Trial Juror's Manual" which contained a paragraph on resolving differing viewpoints. We reversed the judgment on another ground, remarking regarding this ground that "we trust the problem will not recur on retrial."

We have reexamined the jurors' affidavits before us. From our overview of the authorities cited by the parties and the results of our own research, we conclude that on this record we cannot say the trial court abused its discretion in refusing a new trial. We thus uphold the court's ruling.

AFFIRMED.