STATE of Iowa, Appellee,

v.

Donald Ray FOLCK, Appellant.

No. 66672.

Supreme Court of Iowa.

Oct. 27, 1982.

G. Steven Walters of Webster, Jordan, Oliver & Walters, Winterset, for appellant.

Thomas J. Miller, Atty. Gen., Shirley Ann Steffe, Asst. Atty. Gen., and John W. Criswell, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and LeGRAND, UHLENHOPP, HARRIS and LARSON, JJ.

LeGRAND, Justice.

This is a consolidated appeal from judgment imposed by the trial court following defendant's conviction of the crimes of kidnapping in the first degree and sexual abuse in the third degree and from an order

denying postconviction relief. We affirm defendant's conviction and sentence for kidnapping, and we affirm the denial of postconviction relief. We reverse the conviction and sentence on the charge of sexual abuse.

Early on the evening of November 19, 1980, two young women, Nora Sakellariou and Cara Griffo, were hitchhiking in Des Moines when the defendant and his half-brother offered them a ride. During the next two hours, the four drove around the area, stopping at a number of places, including two bars. All four were drinking beer. Finally defendant stopped at a country store, where he purchased more beer. Until that time the association of the four was entirely voluntary. However, when they left the country store, defendant turned the car away from the city and drove down a secluded gravel road between two corn fields. At this time the two women became apprehensive and asked to be either let out or taken home.

In response to these requests, defendant turned "really nasty." He swore at the two girls, called them "sluts" and "miserable bitches," and said, "Don't worry about it." "You're going for a ride whether you like it or not."

After driving for an additional ten minutes, defendant stopped the car on a gravel road. Both women attempted to escape. Defendant prevented one from leaving by grabbing her around the neck. The other, unwilling to abandon her friend, remained in the car.

Defendant ordered Nora to the front seat, told her to undress, and demanded that she perform fellatio upon him. When she resisted defendant said, "You bitch, you better do what I say or else I will kill you." Nora then complied. She was also forced to lie down on the front seat and to engage in sexual intercourse with defendant. Within a few minutes, defendant again required Nora to engage in sexual intercourse.

After these various assaults were complete, Nora was allowed to dress. Defendant drove her and her companion back to town and dropped them off at a downtown intersection. Nora spotted a police car and reported the assaults to two police officers.

This was at approximately 11:30 P.M., about two hours after leaving the country store, the last stop before defendant drove out into the country. The police officers described both Nora and Cara as hysterical.

At trial defendant asserted an alibi defense. According to his testimony, corroborated by his half-brother, and by the testimony of two friends, defendant had dropped the two girls off at a gas station around 9:00 P.M. Defendant claimed he did not see them after that time. The alibi testimony proved unpersuasive, and defendant was convicted of both kidnapping in the first degree and sexual abuse in the third degree. Other facts will be related where pertinent to the issues discussed.

I. *Sufficiency of the Evidence to Support the Charge of Kidnapping.*

Kidnapping is defined in section 710.1, The Code 1979, in pertinent part as follows:

A person commits kidnapping when he or she either confines a person or removes a person from one place to another, knowing that he or she has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:

. . . .

(3) The intent to . . . subject the person to a sexual abuse.

Under section 710.2, kidnapping becomes kidnapping in the first degree "when the person kidnapped, as a consequence of the kidnapping . . . is intentionally subjected to torture or sexual abuse."

Defendant claims there was insufficient evidence to make a jury case on the elements of confinement or removal. He argues that the State should not be permitted to tack a kidnapping charge on what is essentially a sex abuse case and that the evidence which the State relied on to prove kidnapping describes conduct which was merely incidental to the acts of sexual abuse.

As already mentioned, the association of the parties was entirely voluntary until leaving the country store. If kidnapping occurred, it was after that time. After

leaving the country store, defendant drove to a secluded spot on a country road shielded from view by cornfields on each side. He refused Nora's requests to be released or taken home. He insulted her and threatened her with violence. Then she sought to escape, he restrained her by force and repeated—and intensified—his threats.

Not every incidental confinement or every trivial movement from one place to another warrants a kidnapping conviction. *State v. Mead,* 318 N.W.2d 440, 444 (Iowa 1982); *State v. Marr,* 316 N.W.2d 176, 179 (Iowa 1982). We delineated the rules for determining if the evidence is sufficient for this purpose in *State v. Rich,* 305 N.W.2d 739, 745 (Iowa 1981) as follows:

1. No minimum period of confinement of distance of removal is required for conviction of kidnapping.
2. The period of confinement or distance of removal must exceed what is normally incidental to the commission of sexual abuse.
3. The confinement or removal must have significance independent from the act of sexual abuse itself in one of the following ways:
 a. Substantially increase the risk of harm to the victim.
 b. Significantly lessen the risk of detection, or
 c. Significantly facilitate escape following the consummation of the sex abuse offense.

*See also State v. Knupp,* 310 N.W.2d 179, 182–83 (Iowa 1981), analyzing the circumstances which amount to sufficient confinement and removal to constitute kidnapping. Other cases bearing on this matter include *State v. Bruns,* 304 N.W.2d 217, 218 (Iowa 1981); *State v. Holderness,* 301 N.W.2d 733, 740 (Iowa 1981); *State v. Stevens,* 289 N.W.2d 592, 593–94 (Iowa 1980); *State v. Steltzer,* 288 N.W.2d 557, 558 (Iowa 1980); *State v. Rinehart,* 283 N.W.2d 319, 320 (Iowa 1979).

Taking the evidence in the most favorable light for the State, we hold there was a jury question on the issue. The confinement of the complaining witness extended over a period of several hours. She was taken to a secluded spot where detection was unlikely. The remoteness of the place where the attack took place substantially increased the risk of harm if she sought to defend herself or to escape. This was not the type of confinement or removal which is merely incidental to the act of sexual abuse.

## II. Error in Permitting Jeanne Rocque to Testify for the State.

On the last day of the trial the State called Jeanne Rocque as a witness. Defendant asserted error in permitting her to testify because the State had neither filed minutes of her testimony pursuant to Iowa R.Crim.P. 5(3) nor complied with the notice provisions of Iowa R.Crim.P. 10(10)(a). Defendant also insists this violated his rights under the United States Constitution, amendments V and XIV, and the Iowa Constitution, Art. I, § 9.

Defendant's whole theory, including the constitutional argument, is based on *State v. Walton,* 228 N.W.2d 21, 25 (Iowa 1975), which deals solely with rebuttal of *alibi* testimony. The trial court correctly ruled that the testimony of Jeanne Rocque was not used to rebut defendant's alibi. She testified only to prior sexual acts with the defendant and his half-brother to refute matters they had previously testified about. This was proper rebuttal testimony, but it was not alibi rebuttal testimony. The names of rebuttal witnesses need not be listed on the information. *State v. Bakker,* 262 N.W.2d 538, 543–44 (Iowa 1978). Neither are such witnesses subject to Iowa R.Crim.P. 5(3) or 10(10)(a). Under these circumstances, *Walton* does not support defendant's position and the constitutional provisions relied on are not applicable.

## III. Jury Misconduct.

One basis for this appeal is defendant's assertion of jury misconduct in two areas. First, he says that the jury "improperly received and considered information supplied from a juror's own knowledge." He

also claims the jury was "exposed to a number of extraordinary and improper influences and followed a number of extraordinary and improper practices."

### a). *Information from Juror's Own Knowledge.*

Trials are to be decided on facts produced in court under rules of evidence and subject to cross-examination. Consideration of matters outside the record may, under certain circumstances, require a new trial. Iowa R.Crim.P. 23(2)(b)(2); *Kalianov v. Darland,* 252 N.W.2d 732, 737 (Iowa 1977).

Defendant asserts three instances in which the jury violated this principle. First, defendant says one of the jurors supplied the jury with information concerning the place where Ann Jacobus, one of defendant's alibi witnesses, lived. He attaches great importance to this on the issue of the time and place defendant picked complainant and her companion up.

He also complains about statements by a juror regarding the location of a shelter house in St. Charles Park, a place where defendant testified he had intercourse with a young lady shortly before the events here in question. The purpose of this evidence was to explain semen stains found on the front seat of defendant's car and to refute the State's contention that these stains were related to the sexual abuse practiced upon the complainant.

The third item concerns the statement of a juror that patrons of "Another World Bar" were not people to be believed.

These matters were brought to the attention of the court by the affidavits of several jurors. Much, but not all, of the circumstances contained in the affidavits concern facts which inhere in the verdict. There are, however, objective facts, too, which it was manifestly improper to bring into the jury room. This does not necessarily entitle defendant to a new trial.

Defendant must first prove the facts by competent evidence; establish that they did constitute misconduct; and show they probably influenced the verdict. *Harris v.* *Deere & Co.,* 263 N.W.2d 727, 729–30 (Iowa 1978).

The following quotation from *Harris v. Deere & Co.* is applicable here:

[O]nce the objective facts [of jury conduct] are proven as to what transpired relief is available only if two elements appear. First, the acts or statements complained of must exceed tolerable bounds of jury deliberation, that is, they must constitute jury misconduct. Of necessity jurors have considerable latitude in their deliberations, and conduct or occurrences which are within tolerable limits are said to "inhere in the verdict." This court stated in *Long v. Gilchrist,* 251 Iowa 1294, 1299, 105 N.W.2d 82, 85:

We cannot consider the mass of the back and forth argument in the jury room, entered into prior to the final verdict. All such matters inhere in the verdict. A juror cannot impeach his own verdict. If we were to analyze and review and sometimes reject as misconduct all arguments in a jury room, there would never be a finality as to jury verdicts. Even if the argument oftentimes roams far afield, it ultimately inheres in the unanimous verdict.

*See also State v. Houston,* supra, 209 N.W.2d 42, 45 (Iowa) ("Historically, we have considered such situations with a bemused but limited tolerance for the ingenuity of jurors and the realization a rigid approach would result in interminable litigation.") *State v. Lass,* supra, 228 N.W.2d 758, 771 (Iowa) ("As a practical matter, courts cannot be too strict on jury discussions or few verdicts could stand." *State v. Smith,* 240 N.W.2d 693, ("Differences of opinion in the jury room cannot be avoided and courts properly are reluctant to intrude upon the give-and-take discussions, frequently heated and sometimes offensive, which lead to a verdict. They are part of the jury process. Such matters are said to inhere in the verdict and cannot be used to impeach it").

The other element is embodied in the rule, "In order to justify a new trial on the basis of misconduct of jurors it must appear the misconduct was calculated to, and it is reasonably probable it did, influence the verdict." *In re Estate of Cory,* 169 N.W.2d 837, 845 (Iowa). 263 N.W.2d 730–31.

■ *Harris* catalogs cases in which we have considered the issue of alleged jury misconduct. Each case must be decided on its own facts, and prior cases afford only a limited help in resolving a particular problem. The granting or denial of a new trial on this ground is a matter of trial court discretion. *Id.* at 729; *State v. Lass,* 228 N.W.2d 758, 771 (Iowa 1975). We interfere only if there has been an abuse thereof. *Harris,* 263 N.W.2d at 730–31.

■ We have reviewed the record in the present case as it deals with jury misconduct. We do not believe the objectionable matter could have influenced the verdict. We cannot say the trial court abused its discretion in refusing to grant a new trial.

b). *Jury's Exposure to Improper Influences.*

■ The same result obtains in the complaint about exposure to improper influences. Several jurors felt they were "brow beaten" by the other jurors and denied a fair chance to express their opinions. They were made to feel there was something wrong about a hung jury and, "worn down and emotionally drained," they "finally succumbed" to the majority. These are matters which inhere in the verdict and which fit within the language already quoted from *Harris v. Deere & Co.* The trial court did not abuse its discretion in denying defendant's motion for a new trial on this ground.

IV. *Prior Sexual Conduct of Complainant and Other State Witness.*

Prior to trial defendant filed an application pursuant to Iowa R.Crim.P. 20(5) seeking court approval for the introduction of evidence regarding the prior sexual conduct

of both Nora Sakellariou and Cara Griffo. The trial court sustained part of the application but denied the remainder. Defendant alleges error because the court failed to sustain the entire motion. Defendant claims, too, that this violated his right to confront witnesses as provided by the sixth and fourteenth amendments of the federal constitution. The objection based on Iowa R.Crim.P. 20(5) applies only to Nora Sakellariou, the prosecuting witness.

Iowa R.Crim.P. 20(5) provides as follows:

In prosecutions for the crime of sexual abuse, evidence of the prosecuting witness' previous sexual conduct shall not be admitted, nor reference made thereto in the presence of the jury, except as provided herein. Evidence of the prosecuting witness' previous sexual conduct shall be admissible upon appropriate order of the court if the defendant shall make application to the court not later than five days before trial.

The court shall conduct a hearing in camera as to the relevancy of such evidence of previous sexual conduct, and shall limit the questioning and control the admission and exclusion of evidence upon trial.

In no event shall such evidence of previous sexual conduct of the prosecuting witness committed more than one year prior to the date of the alleged crime be admissible upon the trial, except previous sexual conduct with the defendant. Nothing in this rule shall limit the right of either the state or the accused to impeach credibility by the showing of prior felony convictions which are otherwise admissible.

■ We hold the trial court was right in rejecting this evidence. It was irrelevant to any issue in the case. The test of relevancy is whether the evidence offered would render the desired inference more probable than it would be without such evidence. *State v. Ball,* 262 N.W.2d 278, 279 (Iowa 1978).

Defendant sought to inquire into the complainant's past sexual conduct for the stated purpose of showing her oral gonor-

rhea had not been contracted from defendant. Prior to trial, it was stipulated this condition had not been acquired from defendant, but from some other person. This was no longer an issue in the case, and the evidence was irrelevant.

Defendant asserted another basis for the admission of evidence of complainant's past sexual conduct. At one time during the evening in question, the two girls had been alone in the car with defendant's half-brother. Defendant's half-brother claimed both girls forced him to submit to fellatio during that time and that Nora forced him to engage in sexual intercourse with her.

Defendant argues the prior conduct of complainant showing sexual acts with other men was admissible as corroborative of the testimony concerning her conduct with his half-brother on the night in question. We hold the evidence lacked relevance on this issue. We consider specious the argument that because complainant willingly engaged in sexual acts on previous occasions with persons of her choice she would force some other person to engage in a similar act at another time. *State v. Davis,* 269 N.W.2d 434, 439 (Iowa 1978); *State v. Ball,* 262 N.W.2d at 280.

 Defendant also objects because the trial court refused to permit evidence of prior sexual conduct of Cara Griffo, who witnessed the assault and testified for the State. He claims this evidence was admissible to impeach her because she lied in giving deposition testimony prior to trial. This "lying" consisted of evasive and contradictory statements concerning the kind and frequency of her sexual activity as well as the number of sexual partners she had. These inconsistencies were resolved by cross-examination before the deposition was concluded. In denying defendant the right to show Cara's prior sexual conduct, the trial court qualified its order by holding these matters might be inquired into for impeachment if Cara testified contrary to any previous sworn statements. Counsel did not pursue this matter during Cara's trial testimony. We assume from this there was no basis for doing so. We find no

ground on which the testimony concerning the prior sexual conduct of Cara was relevant to any issue in this case.

Because we find the evidence of past sexual conduct was irrelevant, it is unnecessary to reach the defendant's constitutional issue. Defendant has no constitutional right to elicit irrelevant testimony under the guise of cross-examination. *State v. Davis,* 269 N.W.2d at 438.

V. *Private Communication Between Court and Jury.*

During its deliberations, the jury requested that certain testimony be read from the record. The trial court, without notifying counsel or the defendant, refused the request with this written notation:

I am sorry but this is not possible. You will have to rely on your collective memories.

 Following the giving of the Allen instruction, the jury renewed its request. The trial court then called the jury into the courtroom and, with defendant and counsel present, had the court reporter read the part of the record which the jury had originally requested. We recently discussed this question in *State v. Griffin,* 323 N.W.2d 198 (Iowa 1982) and held that *all* communications between court and jury are now required to be given in the presence of the defendant and counsel. Iowa R.Crim.P. 18(5)(g). The trial court should have followed this procedure when the first request was received, even if the request was denied. In view of the proceedings which followed and in view of the fact that the testimony originally requested was ultimately furnished to the jury with defendant and counsel present, there was no prejudice. Defendant's argument is without merit.

VI. *Alleged Perjury of Nora Sakellariou.*

 This objection, which arose in defendant's motion for new trial, is based upon an alleged conversation which complainant had with one Greg Higday after this trial, in which she is said to have admit-

ted certain things inconsistent with some of her trial testimony. Defendant says he is entitled to a new trial on the basis of this newly discovered evidence that Nora committed perjury. Even if we give full credence to everything she is alleged to have said, it would fall far short of establishing perjury during her trial testimony. Inconsistency, contradiction, and statements which are not true do not necessarily constitute perjury. To be perjurious the testimony must be knowingly false. Iowa Code § 720.2.

To sustain a motion for new trial on the ground of newly discovered evidence, it must appear that:

(1) the evidence was discovered after trial and before judgment,

(2) it could not have been discovered earlier in the exercise of due diligence,

(3) it is material to the issue, not merely cumulative or impeaching, and

(4) it would probably change the result if a new trial is granted.

*State v. Sims,* 239 N.W.2d 550, 554 (Iowa 1976).

In the hearing on defendant's motion for a new trial, much of Higday's testimony was rejected on hearsay grounds. His evidence, which appears in the record by way of an offer of proof, affords no grounds for a new trial. He testified complainant said she and Cara were in the car "having fun" with defendant's half-brother and "took advantage of him." Higday added he didn't know what the statement meant. She also said, according to Higday, that they "had hung somebody's ass." This "somebody" was not identified. Higday said he "guessed" it was the defendant.

All of this took place in a Des Moines bar when Higday, who had been in jail with defendant, sought out complainant for the express purpose of getting information to help defendant obtain a new trial.

Higday's proffered testimony is both trivial and immaterial. It does not identify what complainant meant by "having fun" with defendant's half-brother or what taking advantage of him entailed. Neither did the complainant identify whose "ass was hung." It is unlikely this evidence, if produced at a new trial, would change the result. The trial court did not abuse its discretion in refusing to grant a new trial on this ground.

VII. *Included Offense.*

Defendant argues he cannot be convicted of both kidnapping and sexual abuse because the latter is an included offense of the former. If defendant is correct, we must consider his complaint in the light of Iowa Code section 701.9 and Iowa R.Cr.P. 6(2).

Section 701.9 provides:

No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

Rule 6(2) is as follows:

Upon prosecution for a public offense, the defendant may be convicted of either the public offense charged or an included offense, but not both.

One crime is included within another when the lesser is composed solely of some, but not all, of the elements of the greater and when the greater offense cannot be committed without committing the lesser. *State v. Sangster,* 299 N.W.2d 661, 663 (Iowa 1980).

In the present case, the State accused defendant of kidnapping in the first degree. One of the elements of this offense, as charged by the State, is intentionally subjecting the victim to sexual abuse. Iowa Code § 710.2. Under these circumstances, as we held in *State v. Whitfield,* 315 N.W.2d 753 (Iowa 1982), sexual abuse is an included offense of kidnapping. In *Whitfield* we said:

The method in which the first degree kidnapping charge was alleged and proven here under section 710.2 was that, as a consequence, the victim was intentionally subjected to sexual abuse. The sexual

abuse to which she was subjected comprised and was made up by the elements of the second count. As alleged and proven here second degree sexual abuse was a lesser included offense of kidnapping in the first degree.

315 N.W.2d at 755.

The State argues *Whitfield* does not control the present case because here there were multiple acts of sexual abuse, one of which could form the basis for defendant's kidnapping conviction and the other for the sexual abuse charge. Defendant refers us to *State v. Holderness,* 301 N.W.2d 733 (Iowa 1981) as authority for this position.

In *Holderness,* a case tried to the court, we upheld convictions for both kidnapping and sexual abuse. The difference between *Whitfield* and *Holderness* lies not in the application of legal principles, but in the facts. *Whitfield* alleged as a separate count the same sexual abuse which was used to elevate the kidnapping charge to first degree kidnapping. In *Holderness* the trial court found facts which supported the commission of two separate offenses. Thus, the circumstances of a case may dictate that sexual abuse is but an included offense of kidnapping or they may justify conviction of both kidnapping and sexual abuse.

In the present case, defendant subjected his victim to three incidents of sexual abuse within a short period of time, all within the confines of his automobile. One was an act of fellatio, the other two were sexual intercourse. Assuming, without deciding, that these different assaults upon different parts of the body *could* have formed the basis for finding defendant had committed separate and distinct crimes, Iowa R.Cr.P. 6(1), we hold this was precluded by the manner in which the case was tried, submitted, and decided. In other words this case fell within *Whitfield,* not *Holderness.*

■ The difficulty with the State's argument is that the case was tried as one continuing event and submitted to the jury in that manner. Under these circumstances the question as to whether there were two separate crimes is not before us. As dictated by *Whitfield,* the judgment on the kidnapping charge may stand; the conviction for sexual abuse must be set aside.

## VIII. *Postconviction Relief.*

Defendant filed a petition for postconviction relief based on the alleged perjured testimony of Jeanne Rocque. Defendant argues this constituted newly discovered evidence which requires that he have a new trial. *State v. Sims,* 239 N.W.2d 550, 554–55 (Iowa 1976). At the postconviction hearing two affidavits of Ms. Rocque were submitted along with the trial transcript and the record of other court proceedings. Ms. Rocque did not testify. The affidavits state in substance that Ms. Rocque testified falsely as to certain facts concerning her relationship with defendant because she was "afraid"; she said only what the county attorney told her to say; and "they" threatened to "put [her] away" if she did not say what "they" wanted.

At issue was the credibility of defendant's half-brother, who testified he had never had sexual intercourse prior to the night of the offense. Ms. Rocque testified at trial that she had sexual intercourse with him at some earlier time. Her affidavits characterized this testimony, along with other testimony about the condition of defendant's car important to establish the time of certain sexual acts between Ms. Rocque and defendant, as false. The State produced Ms. Rocque's father, who testified at the postconviction hearing that his daughter told him, after the trial, that she had told the truth.

The trial court denied the relief requested, finding, among other things, that, even if true, the matters raised in the affidavits probably had no effect upon the jury's verdict. The trial court further found there was no likelihood that the absence of Ms. Rocque's testimony at a second trial would change the result.

■ In postconviction matters we are ordinarily bound by the findings of the trial court. When constitutional issues are raised, we make our own evaluation of the totality of the circumstances. *Stanford v.*

*Iowa State Reformatory,* 279 N.W.2d 28, 31 (Iowa 1979).

We have reviewed the record of the postconviction hearing, keeping in mind defendant claims a violation of his rights under both the federal and Iowa constitutions. These claims are but repetitions of those made in Division II, and defendant is not entitled to urge them again. In any event they are no more persuasive now than they were then.

Defendant's claim is based on the alleged perjured testimony of Jeanne Rocque. Recantation of trial testimony is viewed with suspicion, and the trial court has broad discretion in looking to the whole record to determine if defendant had a fair trial. We reverse only for an abuse of discretion. *State v. Taylor,* 287 N.W.2d 576, 578 (Iowa 1980); *State v. McGhee,* 280 N.W.2d 436, 442 (Iowa 1979), cert. denied, 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980). We find no abuse of discretion here, and accordingly, we affirm the denial of relief.

IX. *Conclusion.*

We affirm defendant's conviction and sentence on the charge of kidnapping in the first degree. We also affirm on defendant's appeal from denial of postconviction relief. For the reasons stated in Division VII, we reverse the conviction and sentence on the charge of sexual abuse.

AFFIRMED IN PART AND REVERSED IN PART.