In the Matter of the ESTATE OF John W. HUGHBANKS, Deceased.

Dorothy A. McKINNEY, Claimant, Appellant,

v.

Martin W. HUGHBANKS and Janet M. Blum, Fiduciaries of the Estate of John W. Hughbanks, Appellees.

No. 92–247.

Court of Appeals of Iowa.

June 29, 1993.

K.L. Kober of Pickett & Kober, Waterloo, for appellant.

David R. Zellhoefer of Zellhoefer Law Offices, Waterloo, for appellee.

Heard by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

HABHAB, Judge.

Plaintiff, Dorothy McKinney, appeals a district court ruling, following a jury trial, denying her claim for $208,000 for services rendered as housekeeper to the decedent, John Hughbanks. McKinney argues the district court erred in: 1) failing to grant a new trial after the jury used a dictionary to look up the definition of the word "family" and "management"; 2) failing to adopt proposed jury instructions; 3) overruling her objections to certain jury instructions; 4) allowing the defendants to allege the defense of gratuitous services only five days prior to trial; and 5) failing to grant a new trial based on the entire record.

McKinney, and the decedent, John Hughbanks, met in 1950. Within a short time, McKinney and Hughbanks were involved in a romantic relationship that lasted until 1989, when Hughbanks died. However, they did not marry.

In 1960, after McKinney's house was destroyed by fire, Hughbanks asked McKinney to move in with him. McKinney used her insurance money from the fire to buy furniture for Hughbanks' house. Hughbanks also brought his baby grandson into the home. From that point, until the baby's maturity, McKinney provided the daily care and housekeeping. McKinney also took care of Hughbanks' mother, who lived in the home for eleven years. During this period of time, McKinney paid for her own motor vehicle, clothing, part of the groceries, and furniture. McKinney also took part in the upkeep of the house, helping with scraping and painting.

McKinney retired in 1975. From 1978 until his death in 1989, Hughbanks suffered numerous medical problems. McKinney provided care for Hughbanks. In 1985, at the request of McKinney, Hughbanks had Lawrence Stumme prepare a will for him. In the will, Hughbanks divided his property among McKinney, his son, and his daughter. McKinney was present for the preparation of the will. Stumme testified that he was never told about any contract of employment between Hughbanks and McKinney. Stumme also stated McKinney didn't seem angry or disappointed over the contents of the will. After Hughbanks' death in 1989, McKinney filed a claim against the estate for $208,000 for services rendered as Hughbanks' housekeeper.

A jury trial was held regarding the claim. At trial, McKinney presented testimony that Hughbanks perceived her as his housekeeper. The jury returned a verdict in favor of the estate, and denied McKinney's claim. Following numerous posttrial motions, McKinney appeals. We affirm.

## I. *Jury Misconduct.*

McKinney claims the district court erred in failing to grant her motion for a new trial based on jury misconduct. McKinney's attorney, by affidavit,[1] claims the jury foreman brought a dictionary with him during deliberations which was used to look up the words "family" and "management".

■ The trial court has broad discretion in ruling on a motion for a new trial and we disturb it only upon a showing the trial court action was "clearly unreasonable under the attendant circumstances." *State v. Sauls,* 391 N.W.2d 239, 240 (Iowa 1986) (quoting *State v. Harrington,* 349 N.W.2d 758, 761 (Iowa 1984)).

■ When there is proof that extraneous material has reached the jury room, the party seeking reversal on a misconduct claim must prove the misconduct was calculated to, and with reasonable probability did, influence the verdict. *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch,* 497 N.W.2d 821, 829 (Iowa 1993); *Doe v. Johnston,* 476 N.W.2d 28, 35 (Iowa 1991). The impact of the misconduct is to be judged objectively by the trial court in light of all the allowable inferences brought to bear on the trial as a whole. *Iowa–Illinois,* 497 N.W.2d at 829.

■ We need not decide whether McKinney's proof was adequate to show the jury foreman brought in a dictionary because, we find, that even if the incident occurred, McKinney has failed to show the misconduct improperly influenced the jury.

In this regard, our supreme court has consistently affirmed a trial court's denial of a new trial when the dictionary definitions are no different than the juror's common knowledge of the terms. *Id.; In re Estate of Cory,* 169 N.W.2d 837, 846 (Iowa 1969); *see also Harris v. Deere & Co.,* 263 N.W.2d 727, 729–34 (Iowa 1978). Such is the case here.

In both the *Estate of Cory* and *Harris* cases, a juror procured dictionary definitions of various terms and read them in the jury room. *Estate of Cory,* 169 N.W.2d at 845; *Harris,* 263 N.W.2d at 732. In neither case was this found to be the type of misconduct which required a new trial. *Estate of Cory,* 169 N.W.2d at 846; *Harris,* 263 N.W.2d at 734. In the *Estate of Cory,* our supreme court stated:

> Misconduct of the jury is not a ground for new trial unless it "materially affects ... substantial rights" of the "aggrieved party" or "prevented the movant from having a fair trial." [citations omitted]

> The trial court has wide discretion in determining whether alleged misconduct of the jurors is prejudicial. Unless abuse of discretion is clearly shown his decision should not be reversed. [citations omitted]

> The annotation "Use of Books in Jury Room", 54 A.L.R.2d 738, at pages 738, 739, states: "There are few cases raising the question herein discussed, and most of them have involved a jury's use of a dictionary. Although these few cases, in many of which the courts disposed of the question in a summary manner, reveal some conflict in principle, most of the conflict is

---

1. There are no affidavits from jurors establishing this assertion. We will assume arguendo that the affidavit of the attorney is competent to establish the facts related in it.

one of result only. Most of the jurisdictions which have passed upon the question proceed on the basis, more often implied than expressed, that prejudice to the complaining party is not presumed but must affirmatively appear in order to require or justify a reversal or a new trial, *and in most of the cases it has been found that no prejudice resulted....*" (Emphasis added.)

We have not previously been presented with the question of whether use by the jury of a dictionary or definitions therefrom requires granting a new trial. We have however considered the problem in regard to unauthorized use of books or pamphlets by jurors during deliberation.

In *Mongar v. Barnard,* supra, 248 Iowa 899 [908], 82 N.W.2d 765 [771 (1957)], we held use in the jury room of a ten-page pamphlet published by the state bar association entitled "You're on the Jury" did not require granting a new trial.

In *Fagen Elevator v. Pfiester,* supra, 244 Iowa 633 [641–42], 56 N.W.2d 577 [581–82 (1953)], which involved a motor vehicle accident, we affirm the trial court's refusal to grant a new trial where it appeared the jurors had at least two copies of a printed book, "The Iowa Drivers' Guide" issued by the state department of public safety, and certain jurors examined and read aloud from the books. At page 642, 244 Iowa, page 582, 56 N.W.2d, we said: "The situation here is somewhat like that where jurors consult a dictionary during their deliberations. This has been held not to require a new trial. 66 C.J.S. New Trial § 58 d(1), page 182; 30 Am.Jur., New Trial, § 84, page 98."

In *Dulaney v. Barnes [Burns],* 218 Ala. 493 [497], 119 So. 21 [25 (1929)], a will contest on the grounds of undue influence, the jurors secured Webster's Elementary School Dictionary and during their deliberations had before them the definitions of undue influence and confidential. At page 25, 119 So., the Alabama Supreme Court states: "Such incident, as a rule, is not ground for new trial if it does not appear that the matter was of a character to prejudice the unsuccessful party.

\*     \*     \*     \*     \*     \*

"The definition of words in our standard dictionaries is taken as a matter of common knowledge, which the jury is supposed to possess. There is nothing to indicate that the jury did not give full effect to the definition of 'undue influence' as a legal term given by the judge in his charge." This case strongly supports the ruling of the trial court here.

In the case at bar the bill of exceptions shows a juror during trial procured dictionary definitions of "undue" and "undue influence" and later in the jury room during deliberations read them to the other jurors and they were compared with the definition of undue influence as given in court's instructions. They were not identical. There is no showing the dictionary definitions were different than the jurors' common knowledge of the terms.

It is presumed the jury obeyed the court's instructions. [citations omitted] There is no indication here the jury did not give full consideration to the definitions given in the court's instructions.

The record before us does not support a finding of prejudicial jury misconduct and a holding the trial court abused his discretion in refusing to grant a new trial.

*Estate of Cory,* 169 N.W.2d at 845–46.

In the more recent case of *Harris v. Deere & Co.,* Justice Uhlenhopp, speaking for a unanimous court, and after reviewing cases similar to the case at bar, stated:

The next case, a will contest, involved a problem which we have here—use of a dictionary. *In re Estate of Cory,* 169 N.W.2d 837 [845] (Iowa 1978). A juror procured dictionary definitions of "undue" and "undue influence" and read them in the jury room. This court cited an annotation (54 A.L.R.2d 738) for the statement that most cases find absence of prejudice where jurors use books. The court also cited the *Mongar* case which we have already considered (pamphlet "You're on the Jury"—no new trial), as well as *Fagen Elevator v. Pfiester,* 244 Iowa 633, 642, 56

N.W.2d 577, 582 (book "The Iowa Drivers' Guide"—no new trial). In *Fagen* this court said, "The situation here is somewhat like that where jurors consult a dictionary during their deliberations. This has been held not to require a new trial." In *Cory* this court therefore upheld the trial court's exercise of discretion in refusing a new trial.

*Harris*, 263 N.W.2d at 732.

We find no competent evidence to indicate the misconduct here improperly influenced the jury. We note the following from the trial court's ruling on the motion for "mistrial and to set aside verdict of the jury":

> At approximately 9:40 a.m. Sept. 13, 1991, the jury resumed its deliberations. During the previous night's recess the jury foreman, Louis Conrad, had procured a Webster's Dictionary and brought it with him to the juryroom on the morning of September 13, 1991. The jury reviewed definitions of the terms "family" and "management" as set forth in Webster's Dictionary and decided that the definition's [sic] of the dictionary should not be used. The dictionary was set aside and no further reference was made to it. The jury returned to the Court's definition of "family" and completed their deliberations using the jury instructions provided by the Court in deciding the issues of this case.
>
> There is no indication that the jury utilized any of the definitions contained in Webster's Dictionary in reaching their verdict.

This finding by the trial court is not challenged by the appellant on appeal.

We conclude the trial court did not abuse its discretion in overruling McKinney's motion for a new trial based on the jury's misconduct.

## II. *Jury Instructions.*

McKinney next claims several jury instructions were improper. McKinney also contends the district court erred in refusing her proposed additional instructions.

■ The trial court has a duty to ensure that the jury understands the issues it must decide. *Clinton Land Co. v. M/S Assocs., Inc.*, 340 N.W.2d 232, 234 (Iowa 1983). Thus, the court must "instruct with reasonable fullness on pleaded or properly litigated issues which are supported by substantial evidence." *Gunnison v. Torrey*, 216 N.W.2d 361, 364 (Iowa 1974). The trial court also has a duty to ensure that the jury understands the law it must apply. *Sanders v. Ghrist*, 421 N.W.2d 520, 522 (Iowa 1988). In evaluating this, we read all of the instructions together, not piecemeal or in artificial isolation. *Id.; Clinton Land Co.*, 340 N.W.2d at 234.

■ Specifically, McKinney objects to the definition of "family" found in Jury Instruction 7. Instruction 7 states: "A 'family' is a group of people living in the same household under one management." McKinney claims the definition is far too broad and vague and would be inclusive of persons living under one roof, even though they were not blood related, not a dependent of another for income tax reporting, or bound to perform any duties or hold any responsibilities as a household member.

Instruction 7 comes directly from the Iowa Civil Jury Instructions, section 2600.6. This same definition of family was also articulated in *In re Klepper's Estate*, 244 Iowa 521, 526, 57 N.W.2d 565, 567 (Iowa 1953). We find that the definition of "family" found in Instruction 7 accurately reflects our law on the special defense of gratuity.

McKinney also claims Jury Instruction 6 is improper because the defense of "gratuitousness" was not properly before the jury. For the reasons hereafter stated, we reject this argument.

McKinney also claims that the district court's refusal to instruct the jury on her proposed additional instructions was error. McKinney requested the district court add subsections to Instructions 6 and 7. First, McKinney requested the following be added to Instruction 6:

> There was no blood relationship between Appellant and decedent. The presumption of gratuity ordinarily is less strong as the relationship between the parties becomes more remote.

McKinney also requested additional language be added to Instruction 7 that stated:

It has been said that where the services are so disproportionate as not to be reciprocal, the presumption of gratuity does not apply and the one who has performed the greater service will be entitled to recover.

Finally, McKinney requested an additional paragraph be added to Instruction No. 6 that stated:

The law does not require the person performing the services to show by direct evidence that payment was expected from the person to whom services were rendered in order for the allowance of Claimant's claim.

We find Instructions 6, 7 and 9, as submitted, adequately reflect the law involved in this case and the additional language requested by McKinney is either covered by other instructions when considered as a whole or does not conform to present law. We find the district court did not err in refusing to add additional language to Jury Instructions 6 and 7.

 McKinney makes additional claims of error about the jury instructions. We have considered them and find them to be without merit. In addition, we find the defense of gratuitousness to be properly before the court. The defense of gratuity did not substantially change the issues, nor was McKinney unfairly surprised. Because of discovery which had already taken place, McKinney had adequate notice of the affirmative defense. The issue of gratuity was raised more than a year prior in defendants' interrogatories to McKinney. In addition, the relationship between McKinney and the deceased was an issue throughout the pre-trial discovery.

### III. *Substantial Justice.*

Finally, McKinney argues that based on the entire record the jury verdict was clearly against the weight of the evidence and that the verdict did not "effectuate substantial justice." McKinney therefore argues the district court erred in not granting her motion for new trial.

 In ruling upon motions for new trial the trial court has broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between the parties. Iowa R.App.P. 14(f)(3). Only when there is a clear abuse of discretion will we interfere with a ruling. *Houvenagle v. Wright,* 340 N.W.2d 783, 785 (Iowa App. 1983). A court has no right to set aside a verdict just because it might have reached a different conclusion. *Id.*

We find the trial court did not abuse its discretion in finding the verdict effectuated substantial justice. We find substantial evidence in the record to support the jury verdict. We therefore affirm the district court in refusing to grant a new trial.

We determine any other issues the parties may have raised are either covered by this opinion or are without merit.

**AFFIRMED.**