PERRY L. HAMILTON *v.* STATE OF MARYLAND

[No. 494, September Term, 1975.]

*Decided February 2, 1976.*

The cause was argued before POWERS, MENCHINE and DAVIDSON, JJ.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Michael Glushakow, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Brought to bench trial in the Criminal Court of Baltimore on two charges of storehouse breaking, Perry L. Hamilton was convicted and sentenced to concurrent terms of ten years imprisonment. Prior to commencement of the trial, the trial judge was informed by assigned counsel "that Mr. Hamilton * * * has advised me at this time that he wishes to proceed without counsel and I told him that he would have to tell that to the Court and the Court would have to rule on the request." The trial judge responded as follows: "You may proceed without counsel, but you [1] may sit at the trial table."

That one accused of crime has an independent con-stitutional right of self-representation is now beyond

--------

1. An apparent reference to assigned counsel for the accused.

question. In *Faretta v. California,* 422 U. S. 806, 95 S. Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court of the United States said:

"The Framers selected in the Sixth Amendment a form of words that necessarily implies the right of self-representation. That conclusion is supported by centuries of consistent history."

The Court then added:

"There can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel." 45 L.Ed.2d at 580.

The Supreme Court cautioned that when an accused makes known his desire to represent himself, the trial judge should assure of record that such choice has been knowingly and intelligently made, saying at 45 L.Ed.2d 581:

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits. *Johnson v. Zerbst,* 304 U.S. 458, 464-465. . . . Cf. *Von Moltke v. Gillies,* 332 U.S. 708, 723-724 . . . (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel. McCann,* 317 U.S. 269, 270."

The Supreme Court had been, however, quite emphatic that the constitutional right to self-representation is absolute if knowingly and intelligently demanded, saying at 45 L.Ed.2d 581:

> "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' *Illinois v. Allen*, 397 U.S. 337, 350-351 . . . (concurring opinion of BRENNAN, J.)."

It is true that the assigned public defender in the subject case, unlike the course followed by counsel in *State v. Renshaw*, 276 Md. 259, 347 A. 2d 219 (1975),[2] did not stand mute. Indeed, the record establishes that such assigned counsel participated substantially but not exclusively in the

---

2. In State v. Renshaw, *supra*, the opinion stated that, "at no time did appellee indicate a desire or inclination to waive representation. Nor did he express a desire to proceed in proper person." (266 [225]). Thus, the issue herein decided was not before the Court of Appeals in that case.

management of the conduct of the trial. Such also was the posture of the case in *Faretta v. California, supra,* where the Supreme Court made crystal clear that the fact that an accused was assisted by counsel in the course of the ensuing trial is of no moment in the determination whether the right to self-representation has been denied, saying:

> "We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on *voir dire.* For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.
>
> "In forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense. Accordingly, the judgment before us is vacated, and the case is remanded for further proceedings not inconsistent with this opinion." 45 L.Ed.2d at 582.

In the subject case there was no inquiry under Maryland Rule 719 c such as would have met the command of *Faretta, supra,* that the trial judge cause the accused to "be made aware of the dangers and disadvantages of self-representation." In the absence of such an inquiry when there is an expressed desire for self-representation, we are not permitted to assume from a silent record that the appellant "knowingly and intelligently" chose such a course. Neither are we permitted to assume that appellant would have elected to proceed with the assistance of counsel if such an inquiry had in fact been made.

We note that the subject case came to trial prior to the Supreme Court decision in *Faretta* and necessarily was decided without its guidance.

We do not reach other issues.

*Judgments reversed and case remanded for a new trial.*