# William L. Church

### v.

# Commonwealth of Virginia

Record No. 841373

October 11, 1985

Present: All the Justices

*Michael Morchower (Mark K. Tyndall; Morchower, Luxton & Whaley,* on brief), for appellant.

*Eugene Murphy, Assistant Attorney General (William G. Broaddus, Attorney General,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This criminal appeal presents questions concerning the admission of hearsay evidence, the introduction into evidence of communications between husband and wife, and the voluntariness of defendant's waiver of counsel.

William L. Church was indicted for forcible sodomy and statutory rape, allegedly committed on February 5, 1983, upon a seven-year-old girl. He was found to be indigent, and the court appointed an attorney, R. Donald Ford, to represent him. Both indictments were tried to a jury on November 3, 1983, resulting in a

conviction on the charge of forcible sodomy, for which the jury fixed punishment at confinement in the penitentiary for a term of 25 years. The jury was unable to agree on a verdict in the rape case, however, and a mistrial resulted. The rape case was continued to March 28, 1984, for trial before another jury.

During the interval between trials, the defendant wrote a series of letters to the trial judge, containing a barrage of motions *pro se*. In this correspondence, the defendant expressed dissatisfaction with his court-appointed attorney and said, "I pray that the court grant my motion to fire my attorney and I wish to represent myself with the aid of another court appointed lawyer." Nevertheless, Mr. Ford adopted and filed over his own endorsement one of the defendant's *pro se* motions, asking for a pelvic examination of the victim.

The record on appeal contains no transcript of any proceedings in open court which occurred after the trial resulting in the sodomy conviction on November 3, 1983, and before the hearing on the motion for the pelvic examination on February 23, 1984. However, the court's remarks on the latter date indicate that an unrecorded hearing had been held in the interim:

THE COURT: The case of Commonwealth against William Church. We're here today on Mr. Church's motion for the Court to compel a physical examination of the alleged victim in this case . . . . The Court has appointed Mr. Joseph O. Humphreys as guardian ad litem for [the child].

Mr. Ford, you have been relieved by Mr. Church as his attorney, is that correct?

MR. FORD: Yes, sir.

THE COURT: I think that was done the last time at Mr. Church's request and I told Mr. Church that I would keep Mr. Ford available for him to assist him in any way or provide any kind of advice that Mr. Church might seek of him but it's my understanding, Mr. Church, that you're going to proceed as your own attorney, is that correct?

THE DEFENDANT: That's correct, Your Honor.

THE COURT: All right. Are you prepared to proceed, Mr. Church?

THE DEFENDANT: Yes, sir.

Mr. Ford remained present during the February 23 hearing, but took no active part. The defendant conducted the hearing *pro se*, making an opening statement, cross-examining the Commonwealth's witnesses, and making a closing argument. The court denied the defendant's motions.

The rape case came to trial again on March 28, 1984. Mr. Ford was again present as standby counsel, but the defendant again conducted his defense *pro se*. During voir dire, the defendant moved the court to exclude the witnesses from the courtroom. The court granted the motion and asked who the defense witnesses would be. The defendant named three, one of whom was Mr. Ford. The court asked the defendant whether he understood that this would result in Mr. Ford's exclusion from the courtroom until he testified and that he would therefore be unavailable to assist the defense. The defendant said that he understood and agreed to that procedure.*

The trial proceeded with the defendant representing himself. He made an opening statement, cross-examined the Commonwealth's witnesses, conducted direct examination of his own witnesses, argued evidentiary objections, and made a closing argument. The jury found him guilty of rape and fixed his punishment at life imprisonment. On June 15, 1984, after receiving a pre-sentence report, the court entered judgment on both jury verdicts, to run consecutively. The defendant appeals both convictions.

At the first trial, the child's mother was a witness for the prosecution. She testified that the child had made no report of the crimes in early February 1983, but that toward the end of that month she noticed changes in the child's behavior, including bed-wetting, nightmares, complaint of a vaginal itch, and a fear of being left alone with her father or brother. The mother then said that the child "had an obsession with my husband's and my sex life. She would ask questions and when I'd give her an answer, she'd cry. She'd tell me she didn't want me — us to do that because it was dirty, nasty and it hurt." The defendant's hearsay objection was overruled on the ground that the child's declaration was not offered to show its truth.

■ The court's ruling was correct. The rule against hearsay prohibits, subject to many exceptions, the admission of extra-judi-

---

* By agreement with the Commonwealth's Attorney, Mr. Ford was permitted to re-enter the courtroom temporarily to assist the defendant with preemptory strikes. After he had testified, he also assisted the defendant with jury instructions.

cial statements "only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*" *Richard Eckhart* v. *Commonwealth*, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981). Unless it is offered to show its truth, an out-of-court statement is not subject to the rule against hearsay and is admissible if relevant. The Commonwealth did not offer the child's statement to prove that sex is "dirty, nasty and it hurt." Rather, it was offered to show the child's attitude toward sex, an attitude likely to have been created by a traumatic experience. Although the child made no prompt report of the crime, the Commonwealth was entitled to prove, by circumstantial evidence, that she had been a victim. Thus, the child's out-of-court statement was not hearsay, but was admissible as circumstantial evidence tending to establish the probability of a fact in issue. *Horne* v. *Milgrim*, 226 Va. 133, 139, 306 S.E.2d 893, 896 (1983). Because the hearsay ruling was the basis of the only assignment of error relating to the first trial, we will affirm the conviction for forcible sodomy.

At the second trial, Caroline Church testified as a witness for the Commonwealth. She had been married to the defendant at the time of the alleged offenses, and at the time of the first trial, but had obtained a final divorce before the second trial began. She testified to two statements the defendant had made to her while the child was visiting in their marital home, in which he told her that the child's close presence aroused him sexually.

■ The defendant made no objection to this specific testimony, but he had objected, when Caroline Church was first called as a witness, on the ground that she should not be permitted to testify against him at all because she was his wife. Upon proof of her final divorce, the court properly overruled this objection. As we pointed out in *Stewart* v. *Commonwealth*, 219 Va. 887, 891, 252 S.E.2d 329, 332 (1979), "[t]he privilege of an accused to prevent his spouse from testifying against him is determined at the time of trial and depends upon the couple being validly married at the time."

■ We also noted in *Stewart* that there is an entirely different privilege insuring the inviolability of confidential communications between spouses, which survives the dissolution of the marriage. *Id.* at 892-93, 252 S.E.2d at 333. The defendant assigns error to the court's admission of evidence in violation of the interspousal confidential communication privilege. Because that privilege was

not invoked in the trial court, however, we will not consider it as a ground for reversal on appeal. Rule 5:25 (former Rule 5:21). A defendant who represents himself is no less bound by the rules of procedure and substantive law than a defendant represented by counsel. *Faretta* v. *California*, 422 U.S. 806, 834 n. 46 (1975).

Because we must reverse the rape conviction on another ground, the case may be tried a third time and Caroline Church's testimony may again be offered. Therefore, we shall consider the present state of the law concerning interspousal communications.

When *Stewart* was tried, the general husband-wife privilege was expressed in former Code § 8-288 (Cum. Supp. 1976), relating only to criminal cases. Substantially modifying the common law, it provided, in pertinent part:

> In criminal cases husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor, without the consent of the other, allowed to be called as a witness against the other, except in the case of a prosecution for an offense committed by one against the other . . . .

In the repeal of Title 8 and its recodification as Title 8.01, effective October 1, 1977, that section was repealed and reenacted as a part of Title 19.2, which governs criminal procedure. It now appears as § 19.2-271.2, which provides in pertinent part:

> In criminal cases husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor, without the consent of the other, allowed to be called as a witness against the other, except in the case of prosecution for an offense committed by one against the other or against a minor child of either and except in the case either is charged with forgery of the name of the other or uttering or attempting to utter a writing bearing the allegedly forged signature of the other; but if either be called and examined in any case as a witness in behalf of the other, the one so examined shall be deemed competent, and, *subject to the exception stated in § 8.01-398,* may be compelled to testify against the other under the same rules of evidence governing other witnesses.

(Emphasis added).

When *Stewart* was tried, the interspousal confidential communication privilege was expressed in former Code § 8-289 (Cum. Supp. 1976), relating to both civil and criminal cases. Declaratory of the common law, it provided:

Neither husband nor wife shall, without the consent of the other, be examined in any case as to any communication privately made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage subsisted.

That section was likewise repealed as a part of the 1977 revisions and was replaced by the present § 8.01-398 which ostensibly relates only to civil cases. It provides:

A. Husband and wife shall be competent witnesses to testify for or against each other in all civil actions; provided that neither husband nor wife shall, without the consent of the other, be examined in an actions as to any communications privately made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage subsisted.
B. The proviso in subsection A of this section shall not apply in those instances where the law of this Commonwealth confers upon a spouse a right of action against the other spouse.

We construe the phrase in § 19.2-271.2, italicized above, "subject to the exception stated in § 8.01-398" as a cross-reference which embodies the proviso in § 8.01-398 concerning confidential communications. This has the effect of retaining, as a part of our law of criminal procedure, the historic interspousal confidential communication privilege which was formerly contained in § 8-289, notwithstanding the apparent confinement of its successor statute, the present § 8.01-398, to "civil actions." In the absence of an express enactment to that effect, we will not assume that the General Assembly intended to abrogate this long-standing rule.

We held in *Menefee* v. *Commonwealth*, 189 Va. 900, 55 S.E.2d 9 (1949), that the interspousal confidential communication privilege conferred by the predecessor to § 8-289 (§ 6212 of the Code

of 1919) survived the dissolution of marriage. We reaffirm that interpretation, and hold that the confidential communications made by the defendant to Caroline Church during their marriage must be treated as privileged if the case is tried again.

■ We finally turn to the defendant's assignment that the court erred in "assuming that [his] waiver of counsel was knowingly and voluntarily made." *Faretta* v. *California*, 422 U.S. 806 (1975), held that a criminal defendant has a constitutional right, deduced from the Sixth Amendment, to defend himself without counsel if he voluntarily and intelligently elects to do so. The right to counsel, however, is so fundamental to the human rights of life and liberty that its waiver is never presumed, and the "courts indulge every reasonable presumption against waiver." Thus, the trial judge has the duty to determine whether such a waiver is voluntarily and intelligently made, "and it would be fitting and appropriate for that determination to appear on the record." *Johnson* v. *Zerbst*, 304 U.S. 458, 465 (1938).

We have held that a party relying on such a waiver must prove its essentials by "clear, precise and unequivocal evidence. The evidence must not leave the matter to mere inference or conjecture but must be certain in every particular." *White* v. *Commonwealth*, 214 Va. 559, 560, 203 S.E.2d 443, 444 (1974).

Whether a waiver is voluntary and competent depends upon the particular circumstances of each case, including the defendant's background, experience, and conduct, *North Carolina* v. *Butler*, 441 U.S. 369, 374-75 (1979), but no particular cautionary instruction or form is required, *Superintendent* v. *Barnes*, 221 Va. 780, 784-85, 273 S.E.2d 558, 561 (1981); *United States* v. *Doe*, 743 F.2d 1033, 1038 (4th Cir. 1984). Even though the trial court is not required to put the defendant through any particular ritual, "he should be made aware of the dangers and disadvantages of self-representation so that the *record* will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (emphasis added) (quoting *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). Even though voluntariness appears probable in the circumstances, we cannot assume it from a silent record. *See Hamilton* v. *State*, 30 Md. App. 202, 351 A.2d 153 (1976).

Here, it appears probable that the trial court conducted an entirely adequate hearing, prior to the defendant's undertaking to proceed without counsel. Doubtless, if the transcript were a part

of the record, it would establish the validity of the defendant's waiver. At the beginning of the February 23 hearing, the court was satisfied of the existence of the waiver and had already made provision for Mr. Ford's continuing attendance as standby defense counsel. The defendant then procured Mr. Ford's absence from the courtroom at the second trial by moving for his exclusion as a witness. Under *Faretta*, the defendant had a right to proceed *pro se* if his waiver was voluntary. Further, the exclusion of witnesses was also a matter of right under Code § 19.2-265.1. It is ironic that the defendant should now be able to rely on conditions entirely of his own making, and which the court was powerless to prevent, as a ground for reversal. Nevertheless, the right to assistance of counsel is so fundamental to the integrity of the criminal justice process that we must reverse because of the fortuitous omission of that part of the record which might have demonstrated the competence of the defendant's waiver.

Accordingly, we will affirm the conviction of forcible sodomy, reverse the conviction for rape, and remand the case to the trial court for further proceedings consistent with this opinion, including retrial for rape if the Commonwealth be so advised.

*Affirmed in part,*
*reversed in part,*
*and remanded.*