COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Coleman and Overton
Argued at Salem, Virginia


PATRICIA HANSON, S/K/A
 PATRICIA HANSON BAILEY
                                   MEMORANDUM OPINION[*] BY
v.         Record No. 2899-95-3    JUDGE SAM W. COLEMAN III
                                        APRIL 1, 1997
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                    William W. Sweeney, Judge

          Thomas S. Leebrick (Mosby & Leebrick, on
          brief), for appellant.

          John H. McLees, Jr., Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     The circuit court convicted Patricia Hanson on two counts of

contempt for violating two juvenile court orders and sentenced

her to two concurrent ten-day jail terms.  On appeal, Hanson

contends that the circuit court erred by (1) using an abuse of

discretion standard for review, rather than conducting a de novo

review, (2) admitting hearsay testimony of the juvenile court

judge's order, (3) holding that the juvenile court had the

jurisdiction over Hanson necessary to find her in contempt when

she was not a named party to the proceeding, (4) holding that the

juvenile court had jurisdiction to order Hanson's cooperation on

her daughter's delinquency petition when Hanson was not a party

to the action, no final order of delinquency was entered, and no

_____
     [*] Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

finding of delinquency was made, and (5) finding the evidence sufficient to support Hanson's contempt citations.  For the reasons that follow, we affirm Hanson's contempt citation for disobeying the juvenile court's September 1994 order, however, we reverse Hanson's contempt citation for disobeying the July 1994 order.

## BACKGROUND

On July 27, 1994, the Bedford County Juvenile and Domestic Relations District Court, after considering a CHINS[1] petition, found that Patricia Hanson's daughter was a child in need of supervision and ordered, among other things, that the appellant "have an  evaluation of her need for alcohol treatment" and that she "enter and complete treatment if recommended."  In September 1994, a delinquency petition was brought against Hanson's daughter, charging her with violating a court order.  On September 1, 1994, the court found that the evidence was sufficient to prove that Hanson's daughter was delinquent, but took the petition under advisement for twelve months.  The juvenile judge ordered the child to be placed in the Presbyterian Home and ordered Hanson to immediately apply for Medicaid assistance for the child and that she cooperate with the court service unit in all matters relating to her daughter.

On December 20, 1994, the juvenile court issued a show cause summons against Hanson pursuant to Code § 18.2-456 charging her

---

[1] Children in Need of Supervision.  See Code § 16.1-278.5.

with contempt for failing to complete the ordered alcohol abuse counselling and failing to apply for Medicaid. On February 6, 1995, the juvenile court issued a second show cause summons against Hanson pursuant to Code § 16.1-69.24 charging her with contempt for failing to cooperate with the court service unit by removing her daughter from the Presbyterian Home before the program was completed.

The juvenile court conducted a show cause hearing and found Hanson in contempt on both charges and sentenced her to ten days in jail for each contempt, to be served consecutively. Hanson appealed to the circuit court.

In the circuit court hearing, a court service unit probation officer testified that Hanson's daughter had reported problems with Hanson abusing alcohol in the home. The probation officer testified that as a result, the juvenile court judge ordered that Hanson be evaluated to determine her need for alcohol treatment in July of 1994. Hanson began but did not complete the alcohol assessment program.

As to the September 1994 delinquency order, the court service unit probation officer testified that it arose from an assault and battery charge which Hanson lodged against her daughter. The probation officer stated that Hanson was "very much a part of the decision to place [her daughter] at the Presbyterian Home. [Hanson] said that . . . she could no longer keep [the daughter] at home." The officer testified that Hanson

contacted him in January 1995 and wanted to withdraw her daughter from the Presbyterian Home. He informed Hanson that her daughter had been ordered to complete the program unless Hanson petitioned the juvenile court to amend the September 1994 order. However, Hanson removed her daughter from the Presbyterian Home program without petitioning to amend the order and before the daughter completed the program.

One of the case workers at the Presbyterian Home testified that Hanson was "sabotaging" their efforts to work with the daughter. The case worker stated that one of the daughter's problems was truancy, and when the daughter visited Hanson, Hanson did not make the daughter go to school and was consistently late in returning the daughter to the Home. While her daughter was still at the Home, Hanson took her, without informing the Home's staff, to see a psychiatrist who diagnosed her as being manic-depressive. However, the Home's case worker did not believe that the daughter was manic-depressive. The case worker further testified that she told Hanson that she would have to either petition the court to amend the order or revise the service plan to shorten the program to end on January 23, 1995 before she could remove her daughter from the Home. Hanson opted to revise the service plan, but then signed a discharge statement removing her daughter from the Home on January 17, 1995, before the end of the revised program. The case worker testified that Hanson had not allowed her daughter to sign the discharge

statement because she did not want the daughter held accountable for the removal decision.

Hanson acknowledged that in July 1994 the juvenile court ordered that she be assessed for alcohol abuse. Hanson testified that she had difficulty attending her alcohol evaluation appointments because she did not drive and her husband, who could drive her, worked out of town during the week. ARISE, the alcohol assessment center, informed Hanson that her file was being closed because she had failed to keep her scheduled appointments. Hanson did eventually complete the alcohol assessment program, which determined that she did not have an alcohol problem. However, Hanson did not complete the alcohol evaluation program until October 1995, after she was convicted by the juvenile court of contempt, but before her circuit court show cause hearing.

As to Hanson's failure to obey the September 1994 order, she testified that she did not obtain a Medicaid card for her daughter as ordered because the court service unit never contacted her after her daughter entered the Presbyterian Home, so she assumed that they did not need the card. Hanson testified that she disagreed with the Home staff that her daughter suffered a bipolar or manic-depressive disorder. Hanson further testified that she knew that she could not withdraw her daughter from the Home without having the juvenile court amend its order or revise the service plan. Nevertheless, Hanson withdrew her daughter

- 5 -

from the Home on January 17, 1995 without the permission of the court or the court service unit. On cross-examination, Hanson admitted that she knew she violated the juvenile court's order when she removed her daughter from the Home.

The circuit court judge, in his letter opinion, found beyond a reasonable doubt that Hanson had willfully violated both juvenile court orders. Accordingly, the court found her in contempt and imposed two ten-day jail sentences to run concurrently.

<u>STANDARD OF REVIEW</u>

Prior to the circuit court trial, the judge expressed his belief that the standard of review for contempt appeals from a court not of record is for abuse of discretion rather than <u>de novo</u>. Defense counsel objected and argued that the evidence should be reviewed <u>de novo</u>. At the conclusion of the evidence, the judge issued a letter opinion stating, "I find beyond a reasonable doubt that Patricia Hanson willfully violated both orders."

In <u>Baugh v. Commonwealth</u>, 14 Va. App. 368, 417 S.E.2d 891 (1992), this Court held that appeals of contempt citations from district courts are reviewed <u>de novo</u>.

> Code § 16.1-132 grants to any person convicted of an offense in the district court the right of appeal to the circuit court and Code § 16.1-136 provides that such appeal shall be heard <u>de novo</u>, as a new trial. The issue before the circuit court is not the disposition of the matter in the lower court, but the defendant's guilt or innocence. In this determination, the

> judgment of the district court must be ignored. In the appeal of a contempt citation, however, those events which occurred in the district court comprise the evidence of the offense before the court of record. The occurrence, circumstances and perceptions of the district court judge are relevant and necessary direct evidence in the appellate proceeding, the admission of which does not effect the de novo nature of the trial.

Id. at 373, 417 S.E.2d at 894 (citations omitted). Thus, the correct standard of review in the circuit court was a de novo review of whether Hanson willfully violated the two court orders.

Although the trial judge initially stated his belief that the standard of review was an abuse of discretion, the judge's opinion letter found beyond a reasonable doubt that Hanson willfully violated the juvenile court orders. Thus, the trial judge applied the correct standard of review and considered the evidence de novo.

### HEARSAY EVIDENCE

The appellant contends that the trial judge erred by admitting the hearsay testimony of the court service unit probation officer to prove what the juvenile court judge ordered the appellant to do in the July 27, 1994 and September 1, 1994 orders. We disagree.

"Hearsay is a statement, other than one made by the declarant while testifying at trial, which is offered to prove the truth of the matter asserted." Clark v. Commonwealth, 14 Va. App. 1068, 1070, 421 S.E.2d 28, 30 (1992). "Unless it is offered

to show its truth, an out-of-court statement is not subject to the rule against hearsay and is admissible if relevant." Church v. Commonwealth, 230 Va. 208, 212, 335 S.E.2d 823, 825 (1985).

Here, Mr. Harper's testimony as to the contents of the juvenile judge's orders and what the judge ordered the appellant to do was not offered for the truth of its contents. The orders themselves were evidence in the case. The testimony of the probation officer was offered to prove that the trial judge told Hanson of the requirements of the order and proved that she had notice of the orders. Therefore, the trial judge did not err in admitting the evidence.

### JULY 1994 CHINS ORDER

Because Hanson was not a named party to the July 1994 CHINS order entered by the court, she contends that the juvenile court did not have jurisdiction to order her to have an alcohol treatment evaluation and to enter a treatment program if indicated. More specifically, Hanson argues that the evidence was insufficient to prove that she was a contributing factor to her daughter's need for supervision as required under Code § 16.1-241(F)(3). We find that the evidence was sufficient to support the trial court's finding that she contributed to the need for supervision and, therefore, the juvenile court had jurisdiction to order the alcohol evaluation.

Code § 16.1-241(F)(3) gives the juvenile court jurisdiction over

> [a]ny parent, guardian, legal custodian or

- 8 -

> other person standing in loco parentis of a child . . . [w]ho has been adjudicated in need of services, in need of supervision, or delinquent, if the court finds that such person has by overt act or omission, induced, caused, encouraged or contributed to the conduct of the child complained of in the petition.

Furthermore, Code § 16.1-278.5(B)(3) gives the court the authority to "[o]rder the child and/or his parent to participate in such programs, cooperate in such treatment or be subject to such conditions and limitations as the court may order and as are designed for the rehabilitation of the child."

At trial, the court service unit probation officer testified that there were "problems within the household, fighting, staying out all night, truancy . . . that sort of thing." Prior to the July 1994 CHINS order, he stated that "there were suspicions that there were problems with alcohol abuse in the household . . . ." Hanson's daughter also testified that, prior to the July 1994 hearing, she told the probation officer that her mother had a problem with alcohol abuse. She later recanted that statement, but not until after the judge entered the order requiring Hanson to obtain the evaluation. Thus, the evidence was sufficient to support the juvenile court's factual finding that the mother had contributed to her daughter's need for supervision, giving the court jurisdiction to order the mother to be evaluated for alcohol abuse pursuant to Code § 16.1-241(F)(3).

### SEPTEMBER 1994 DELINQUENCY ORDER

In the September 1994 delinquency order, the juvenile court

judge found the evidence sufficient to prove that the child was delinquent, but the court took the case under advisement for twelve months. Hanson contends that she cannot be held in contempt of the September 1994 order because it was under advisement and not a final order. The argument is without merit.

In general, an order finally disposing of a case must be entered by a trial court before it is final and may be appealed. Hairfield v. Commonwealth, 7 Va. App. 649, 654, 376 S.E.2d 796, 799 (1989). However, the issue was not whether the delinquency order was final and appealable. An interlocutory order which directs a party to perform or refrain from certain acts is enforceable and may be the subject of a contempt citation. So long as the September 1994 order was a valid court order, as we find that it is, a contempt charge may be brought for failure to obey the court's order.

As to Hanson's claim that the September 1994 delinquency order was not enforceable against her because she was not a named party, Code § 16.1-241(F)(3) confers juvenile court jurisdiction over the parent of a child who has been adjudicated delinquent. Furthermore, if the juvenile is found to be delinquent, Code § 16.1-278.8(6) grants authority to the court to

> [o]rder the parent of a juvenile with whom the juvenile does not reside to participate in such programs, cooperate in such treatment or be subject to such conditions and limitations as the court may order and as are designed for the rehabilitation of the juvenile where the court determines this participation to be in the best interest of the juvenile and other parties concerned and

> where the court determines it reasonable to expect the parent to be able to comply with such order . . . .

In the September 1994 order, the juvenile court judge found the evidence was sufficient to prove that the child was delinquent.  Taking the case under advisement did not void or negate the delinquency finding or defeat the court's jurisdiction to order the child's mother to be evaluated.  Therefore, the juvenile court had jurisdiction to order that the mother be evaluated and to hold her in contempt for willfully disobeying the court's order.

SUFFICIENCY OF THE EVIDENCE

Code §§ 18.2-456 and 16.1-69.24 confer upon the juvenile court the power to punish for contempt in cases of "[d]isobedience or resistance of an officer of the court, juror, witness or other person to any lawful process, judgement, decree or order of the court."  Code § 18.2-456(5).  Willful or intentional disobedience is a necessary element in proving contempt.  Carter v. Commonwealth. 2 Va. App. 392, 397, 345 S.E.2d 5, 8 (1986) (citing 17 Am. Jur.2d Contempt § 8 (1964)).

At the time of the juvenile court contempt hearing, Hanson had attended but had not completed the alcohol evaluation program.  However, when the case was heard de novo in the circuit court, the evidence proved that Hanson had completed the program on October 11, 1995, two weeks before the circuit court trial. The July 27, 1994 order did not provide a time limitation by

which the evaluation was to be completed.  The evidence did not prove that time was of the essence.  The purpose of the judge's order was to have Hanson evaluated to determine the need for alcohol abuse treatment to the extent her conduct may have contributed to her daughter's delinquency.  At the time of the circuit court trial de novo, Hanson had completed the alcohol abuse treatment and was not shown to have willfully disobeyed the court's order.  Thus, the evidence was insufficient for the circuit court to find that Hanson was in contempt of the juvenile court order.  Accordingly, Hanson's contempt citation on this count is reversed and dismissed.

As to the September 1994 order, the evidence was sufficient to support the trial court's finding that Hanson willfully disobeyed that order.  Hanson admitted at trial that she knew she was violating the order by removing her daughter from the Presbyterian Home before the end of the program.  She argues, however, that she intended no disrespect to the court and, therefore, lacked the intent necessary to be in contempt of the order.

Hanson's argument has no merit.  She intentionally disobeyed the court's order.  She removed her daughter from the Presbyterian Home in violation of the order and after being told by the court service unit probation officer and the case worker that she could not do so unless she petitioned the juvenile court to amend its order.  Thus, the evidence is sufficient to support

Hanson's conviction on this count.

In summary, we hold that the trial court used the proper standard of review and that the juvenile court had jurisdiction over Hanson, the child's mother.  The evidence was sufficient to sustain Hanson's contempt citation for violating the September 1994 order.  However, because Hanson completed the alcohol evaluation program, the circuit court erred in finding that she was in contempt on the July 1994 order.  Accordingly, we affirm the appellant's conviction on the September 1994 order and reverse the conviction on the July 1994 order.

<u>Affirmed in part, reversed in part</u>.