COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Humphreys and Retired Judge Olitsky*
Argued at Richmond, Virginia


ANTONIO EDWARD BATTLE

                             MEMORANDUM OPINION** BY
v.    Record No. 1224-98-2     JUDGE JAMES W. BENTON, JR.
                                 JULY 25, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

John B. Boatwright, III (Boatwright & Linka,
on brief), for appellant.

(Mark L. Earley, Attorney General; John H.
McLees, Jr., Assistant Attorney General, on
brief), for appellee.


A jury convicted Antonio Edward Battle of robbery and use of a firearm in the commission of the robbery.  Battle contends the trial judge erred in denying his motion for a continuance and in permitting him to act as his own attorney during the trial.  For the reasons that follow, we reverse the convictions and remand for a new trial.

After Battle's arrest for robbery and use of a firearm in the commission of robbery, a judge of the general district court

---

     * Retired Judge Norman Olitsky took part in the consideration of this case by designation pursuant to Code § 17.1-400, recodifying Code § 17-116.01.

     ** Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

appointed Travis Williams, an attorney, to represent Battle, an indigent person, during the preliminary hearing. Following the preliminary hearing, a grand jury indicted Battle on both charges. The trial judge appointed Williams to continue representing Battle in the circuit court. Two weeks later, Battle wrote a letter to the trial judge dated February 26, 1998, alleging that his attorney had not obtained specific "evidence that can prove [Battle's] innocence," requesting the judge's assistance in obtaining this evidence, and seeking a new attorney. The trial judge sent a copy of the letter to Battle's attorney, who replied that he had met with Battle and "fully explored all the options, evidence and requests that . . . Battle has put forth." On March 5, 1998, Battle's counsel requested and received a thirty day continuance for "more time to prepare [the] case." Five days later, Battle was released on bail. Battle's attorney then filed a motion for discovery.

On May 6, 1998, the day of trial, Battle requested a continuance to retain a private attorney. He alleged that he was employed, that he had been "working hard . . . to afford an attorney," that his appointed attorney had not obtained the evidence he requested, and that he had given new information to his appointed attorney to no avail. Battle's appointed attorney informed the trial judge that the items of evidence existed but "they are [not] essential to the case." He also told the judge that although he was prepared to try the case, he wanted the judge

-

to consider Battle's request to retain his own paid attorney. After hearing Battle's arguments, the trial judge denied his request for a continuance. Following a conference in chambers with only the prosecutor and Battle's appointed attorney, the trial judge returned to court and stated on the record that he had "discussed this case in conference, in camera, in chambers with counsel, and . . . believe[d] both sides are adequately prepared to try this case."

During the arraignment, Battle stated that his appointed attorney was not adequately prepared. His attorney disagreed. Battle again requested a continuance, which the trial judge denied. The Commonwealth's first witness at trial identified Battle as the person who showed her a gun and robbed her. After Battle's attorney cross-examined the witness, Battle informed the judge that he was not satisfied with his attorney and the following exchange ensued:

> DEFENDANT BATTLE: Judge, this is one reason why I wanted other counsel, wanted to pay for other counsel. There are other questions that definitely needed to be asked that I wanted asked that didn't get asked because he feels that they didn't need to. I do feel that they need to be asked, and that's why I've been out working trying to get me a lawyer--

> [JUDGE]: We're not going through this drill again. Mr. Williams is the lawyer in the case. If you want to represent yourself, I'll let you represent yourself.

> DEFENDANT BATTLE: Well, can I represent myself?

-

> [JUDGE]: All right. I'm not dismissing you from the case, Mr. Williams. I'm asking that you be here in the courtroom. I think you're making a mistake, Mr. Battle.
>
> DEFENDANT BATTLE: Sir, my life is on the line. I'm going to do all that I have to do in order to prove my . . . innocence. Excuse me.

During that same exchange, Battle again said "I want another lawyer" and "can it be definitely stated for the record that I choose other counsel."

The trial continued with Battle representing himself. At the conclusion of the evidence, the jury convicted Battle of robbery and use of a firearm in the commission of robbery. This appeal followed.

## II.

"[I]n order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits [that are traditionally associated with the right to counsel]." Faretta v. California, 422 U.S. 806, 835 (1975). Thus, we have ruled as follows:

> A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" . . . "[T]he primary inquiry . . . is not whether any particular ritual has been followed in advising the defendant of his rights and accepting his waiver, but simply whether the procedures followed were adequate to establish 'an intentional relinquishment of the right to counsel, known and understood by the accused. . . .'"

-

<u>Kinard v. Commonwealth</u>, 16 Va. App. 524, 527, 431 S.E.2d 84, 86 (1993) (citations omitted).

The record establishes that Battle consistently requested the trial judge to allow "other counsel" to represent him. Battle did not initiate the idea of representing himself. That idea was proposed by the trial judge after he informed Battle that he would not delay the trial by permitting other counsel to represent Battle. Furthermore, when the trial judge said to Battle, "If you want to represent yourself, I'll let you represent yourself," Battle's response was framed as a question, "Well, can I represent myself?" The record contains no indication that Battle had previously entertained this idea or understood the vast implications of representing himself before a jury.

In <u>Kinard</u>, where the accused "moved to proceed <u>pro</u> <u>se</u>," 16 Va. App. at 526, 431 S.E.2d at 85, we found insufficient the trial judge's warnings that "you're making a big mistake" and that the accused would be "expect[ed] . . . to comport [himself] as any other lawyer." <u>Id.</u> at 527, 431 S.E.2d at 86. The trial judge in this case, however, merely warned Battle, "you're making a mistake." We again note, as we did in <u>Kinard</u>, the following:

> This warning was insufficient to ensure that [Battle] understood that he was undertaking a complex and sophisticated role, the performance of which normally requires a high level of professional training and

-

> competence. It failed to warn him that if
> he rejected professional assistance, he
> would be responsible for the adequacy of his
> defense and would suffer the consequences of
> any inadequacy.

16 Va. App. at 527, 431 S.E.2d at 86.

The Commonwealth argues that "[i]n this case, the Court can . . . properly infer Battle's understanding that self-representation would be risky." Thus, the Commonwealth points to (i) Battle's two felony convictions when he was eighteen years of age and several misdemeanor convictions to establish he "was no stranger to the criminal justice system or to courtroom procedure," (ii) Battle's letter to the trial judge complaining about his attorney's failure to obtain evidence favorable to his innocence, and (iii) Battle's express desire for "the assistance of counsel, thus showing that he was not unaware of the utility of legal counsel."

> The right to counsel, however, is so
> fundamental to the human rights of life and
> liberty that its waiver is never presumed,
> and the "courts indulge every reasonable
> presumption against waiver." . . . [A]
> party relying on such a waiver must prove
> its essentials by "clear, precise and
> unequivocal evidence. The evidence must not
> leave the matter to mere inference or
> conjecture but must be certain in every
> particular."

Church v. Commonwealth, 230 Va. 208, 215, 335 S.E.2d 823, 827 (1985) (citations omitted).

Nothing in this record proves that Battle made a knowing and intelligent waiver of his right to counsel. Clearly, Battle

-

continually and consistently requested representation by an attorney. Expressing his belief that his appointed attorney was inadequately representing him, Battle sought the representation of another attorney "to prove [his] innocence." That was his initiative until the trial judge prompted him to another course. Furthermore, Battle's prior experience with the criminal justice system is not unequivocal evidence that he knowingly and intelligently understood the consequences of his acceptance of the trial judge's offer. It is just as likely that his prior experience was the reason he so forcefully sought to have his own paid attorney represent him. The inferences that flow from the evidence in the record are equivocal. We hold, therefore, that any inferences to be drawn from these matters do not rise to clear, precise, and unequivocal evidence that Battle's acceptance of the trial judge's suggestion that he represent himself was a knowing and intelligent waiver of his right to counsel.

Accordingly, we reverse the convictions and remand for a new trial if the Commonwealth be so advised. Because we reverse on this issue, Battle's other contention concerning the trial judge's refusal to grant a continuance is moot.

Reversed and remanded.

-