COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Coleman and Frank
Argued at Salem, Virginia


DOLLY YVONNE PARKS

MEMORANDUM OPINION[*] BY

v.    Record No. 0545-99-4        JUDGE ROBERT P. FRANK
                                     AUGUST 15, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert W. Wooldridge, Jr., Judge

S. Jane Chittom, Appellate Counsel (Public
Defender Commission, on briefs), for
appellant.

Kathleen B. Martin, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Dolly Yvonne Parks (appellant) was convicted, by a jury, of
first degree murder in violation of Code § 18.2-32.  On appeal,
she contends the trial court erred in:  1) responding to the
jury's question in the sentencing phase of the trial and 2)
allowing her husband to testify to the content of telephone
messages made by appellant to the victim.  We disagree and affirm
the judgment of the trial court.

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## I.   BACKGROUND

Appellant and her husband, Henry Parks (Parks), were married in September 1992.  They separated three years later for approximately seven months before reconciling, and then separated permanently in October 1996.  They had two children, a son and a daughter.  In November 1997, appellant was living in New York with the children and Parks was living in Fairfax County with his girlfriend, Gwendolyn Jackson (Jackson), who was pregnant.

Parks met Jackson in July 1996.  He moved into Jackson's townhouse in September 1997, some three or four months after she became pregnant with his child.  Parks testified that appellant, to whom he was still married, was hostile about his relationship with Jackson.

On November 2, 1997, appellant unexpectedly came to the residence shared by Parks and Jackson between 6:00 p.m. and 7:00 p.m.  An argument ensued between appellant and Parks.  She made comments about Parks' life with Jackson, such as "I can't believe you left me for this."  Appellant threatened Jackson and made derogatory remarks about her relationship with Parks.  Appellant told Jackson she would "beat" her and "kill" her had Jackson not been pregnant.  Appellant thought Jackson was the only impediment to her reconciliation with Parks, even though Parks told her that was not the case.

Parks returned home at 2:00 a.m. on November 26, 1997, and noticed the living room was dark and the upstairs light was on.

-

He quickly ran upstairs to check on Jackson because the house "just felt very cold," "strange," and "like something had gone wrong." Not finding Jackson, he ran back downstairs and discovered her body on the living room floor. Her face was "very bloody." Parks saw "something" wrapped around her neck "fairly tightly." He immediately called 911.

The police responded at 2:16 a.m. The officers observed that a struggle had taken place at the residence, but there were no signs of forced entry. Jackson's body was fully clothed, and she was wearing a leather jacket. Her purse and wallet were on the floor near her outstretched hand. Her body was rigid, which indicated she had been dead for several hours. One eye was swollen shut, and there were scrapes and dried blood on her face. A damp washcloth was found behind the stereo.

The medical examiner determined the cause of death was "strangulation by ligature" and that Jackson's injuries were consistent with having been caused by an extension cord. Appellant's teeth matched the bite mark on Jackson's breast, and the DNA taken from under Jackson's fingernails and from the blood and saliva on her breast was consistent with a mixture of Jackson's and appellant's DNA.

Appellant claimed Parks had given her money to bring their son to Fairfax for Thanksgiving. She said she arrived at Parks' apartment at 7:30 p.m. on November 25, 1997, but no one was home.

-

She and her son went to a nearby fast food restaurant and returned to the apartment at 9:30 p.m. As they approached the apartment, two men she had seen there earlier ran down the steps and left in a car. The apartment was open so she walked in with her son to find Jackson lying on her side on the floor. Appellant said that when she rolled Jackson onto her back, Jackson grabbed and bit her and that she reacted by biting Jackson. She claimed she told her son to find a phone while she tried to perform CPR on Jackson.

Appellant also tried to clear the blood from Jackson's mouth, using her own hand and scarf. She then checked for a pulse and found none, and could not hear Jackson breathing.

Appellant further testified that a man she knew from New York, with whom Parks allegedly had sold drugs, came downstairs and admitted beating Jackson. He ordered her to leave and not to say anything. Appellant took a cab to the bus station where she and her son spent the night.

At trial, Parks testified, over appellant's hearsay objection, that in June 1997 he retrieved two messages from Jackson's voice mail system at her place of employment. Parks called the message service number and then used the "pin number" Jackson had given him to obtain messages. Parks recognized appellant's voice as the caller. In the first message, appellant said in an "angry" tone that Jackson was a "floozie" and a "tramp" who "stole her husband." She also said Jackson was "stupid" for

-

wanting to be with a man in Parks' situation.  The second message was "very short" but similar in context.  The messages were not saved.

When asked at the sentencing hearing how the family was coping with Jackson's death, her father replied they would not "have a chance to meet" her baby.  Neither the question nor answer was objected to by appellant.

During deliberations, the jury asked if it could "take the (absence of) the life of Jackson's baby into consideration." Following the question, counsel and the trial court discussed an appropriate answer.  The Commonwealth suggested the jury should be told that they could consider any harm "flowing" from the crime. Appellant disagreed, contending, because the fetus is not a life, the jury could not take the fetus' life into consideration.

Defense counsel further said the jury could be told it "'must consider only the evidence before you,' which would allow them to take into consideration that [Jackson] was pregnant, but would not define that the child was a life."  Yet, counsel preferred that the trial court simply answer "no" to the jury's question.

The trial judge, indicating he would not answer the question with a simple "no," proposed telling the jury that they "may not consider that the fetus in Gwen Jackson's body was murdered," but that her pregnancy was a circumstance to be considered along with the other evidence in the case.  Defense counsel continued to

-

object to any language that assumed the unborn baby was murdered, i.e. that appellant committed two murders.

The trial court asked the jury to clarify the question. The foreperson said the jurors wanted to know whether they could consider "the loss of the baby's life, the fetus . . . the loss of two lives versus one" in sentencing.

The entire jury panel responded that the foreperson's clarification was what they understood the question to be. The trial court then concluded the jury was asking if it could consider the loss of the fetus as a second murder and decided the jury should be told if that was the question, "the answer is no." Appellant continued to object, asserting that the jury's question was improper because there could not have been a murder of the fetus and that the jury should be told "no," that it could not consider the loss of the fetus. The prosecutor asked the trial court to add that the jury could "consider all of the evidence in the case with respect to the impact upon the victim," but the court declined to do so. The court responded to the jury in writing: "If by this question you are asking whether you may consider the loss of the fetus in Gwen Jackson as a second murder, the answer is no."

## II.  ANALYSIS

### A.  The Jury's Question

Appellant contends the trial court's answer to the jury's question implies that the death of the fetus has some relevance to

-

sentencing, though not as a second murder.  In her reply brief,
appellant further contended the trial court erred in not telling
the jurors not to consider the death of the fetus.

A trial court may provide supplemental instructions to a jury
over a defendant's objection.  See Blevins v. Commonwealth, 209
Va. 622, 628, 166 S.E.2d 325, 330 (1969).  In fact, "[i]t is
proper for a trial court to fully and completely respond to a
jury's inquiry concerning its duties."  Marlowe v. Commonwealth, 2
Va. App. 619, 625, 347 S.E.2d 167, 171 (1986) (citation omitted).
The trial court must "give a direct and correct response to an
inquiry by the jury and its failure to do so is ground for
reversal."  Shepperson v. Commonwealth, 19 Va. App. 586, 591, 454
S.E.2d 5, 8 (1995) (citation omitted).

Appellant's sole concern as to the jury's clarification of
their initial question was that there could not be a murder of a
fetus.  Counsel suggested to the trial court that the answer to
the question should be "no."  The trial court answered the jury,
"If by this question you are asking whether you may consider the
loss of the fetus in Gwen Jackson as a second murder, the answer
is no."  Appellant's concern was to insure that the jury would not
consider the fetus' death as a murder.  The trial court advised
the jury of that specific issue.

Appellant contends the trial court's answer gives credence to
the fact that the child was eligible to be murdered.  The trial
court's response implied no such thing.  The response clearly and

-

correctly addressed appellant's concern by informing the jury that they could not consider the loss of the fetus as murder. The members of the jury, in the clarifying question and the responses to the trial court's poll, indicated their question dealt with whether there was one murder or two. The trial court properly responded they could not consider the death of the fetus as murder.

## B. Hearsay

Appellant contends Parks' testimony regarding voice mail messages to Jackson from appellant is inadmissible double hearsay and because the tape was not produced, its reliability could not be tested. Appellant contended the tape could have been altered.

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" James v. Commonwealth, 18 Va. App. 746, 753, 446 S.E.2d 900, 904 (1994) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citation omitted)).

Hearsay is "primarily testimony which consists [of] a narration by one person of matters told him by another." Williams v. Morris, 200 Va. 413, 417, 105 S.E.2d 829, 832 (1958). However, "[i]f the declaration is offered solely to show that it was uttered, without regard to the truth or falsity of its content, the declaration is not excluded by the hearsay

-

rule."  Speller v. Commonwealth, 2 Va. App. 437, 446, 345 S.E.2d
542, 548 (1986) (citation omitted)).  "In addition, hearsay
evidence is admissible if it falls into one of the recognized
exceptions to the hearsay rule which are based on necessity and
inherent trustworthiness."  Evans-Smith v. Commonwealth, 5 Va.
App. 188, 197, 361 S.E.2d 436, 441 (1987) (citation omitted).

> If, however, the statement is admitted
> to prove some other extraneous fact, such as
> that the statement was in fact made, the
> state of mind of the declarant, or notice or
> knowledge, then the statement is not hearsay
> and will be admissible if relevant and not
> otherwise violative of another rule of
> evidence.  When evidence that might
> otherwise be hearsay is admitted for a
> limited, non-hearsay purpose, the trial
> court must instruct the jury that they are
> to consider the evidence for the specific
> limited purpose; where such a limiting
> instruction is given, we presume that the
> jury followed that instruction.

Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22
(1992) (citations omitted).

In Church v. Commonwealth, 230 Va. 208, 211-15, 335 S.E.2d
823, 825-27 (1985), the Supreme Court of Virginia addressed the
statement of a young victim who told her mother that sex was
"'dirty, nasty and it hurt.'"  The Court ruled that the child's
statement was not hearsay.  See id. at 211-12, 335 S.E.2d at
825-26.

> The Commonwealth did not offer the child's
> statement to prove that sex is "dirty, nasty
> and it hurt."  Rather, it was offered to
> show the child's attitude toward sex, an
> attitude likely to have been created by a

-

> traumatic experience.  Although the child
> made no prompt report of the crime, the
> Commonwealth was entitled to prove, by
> circumstantial evidence, that she had been a
> victim.  Thus, the child's out-of-court
> statement was not hearsay, but was
> admissible as circumstantial evidence
> tending to establish the probability of a
> fact in issue.

Id. at 212, 335 S.E.2d at 825-26.

Similarly, in this case, the challenged testimony was not offered to prove Jackson was a "floozie" or a "tramp" or to prove Jackson stole appellant's husband.  The evidence was offered solely to show appellant's attitude toward Jackson.  The Commonwealth was entitled to prove the bad feelings appellant harbored toward Jackson because motive is "'relevant and often most persuasive upon the question of the actor's intent.'" Archie v. Commonwealth, 14 Va. App. 684, 690, 420 S.E.2d 718, 722 (1992) (quoting Epperly v. Commonwealth, 224 Va. 214, 232, 294 S.E.2d 882, 892-93 (1982)).

Appellant further contends Parks' testimony was double hearsay.  Essentially, appellant argues, there were two out-of-court asserters, appellant and the voice mail recording.

Assuming without deciding that the admission of Parks' testimony, which reported the voice mail recording, was hearsay, the admission of Parks' testimony was harmless error.

> Non-constitutional error is harmless
> "[w]hen it plainly appears from the record
> and evidence given at trial that the parties
> have had a fair trial on the merits and
> substantial justice has been reached."  To

-

determine whether an error is harmless, we "must review the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues."

Purvis v. Commonwealth, 31 Va. App. 298, 308, 522 S.E.2d 898, 902 (2000) (citations omitted).

In this case, Parks' testimony was admitted to show appellant's attitude toward Jackson. There was evidence before the jury that appellant appeared on November 2, 1997, at the home shared by Parks and Jackson. On that date, she told Parks, "I can't believe you left me for this." She also threatened Jackson and made derogatory remarks about Jackson's relationship with Parks. Specifically, she told Jackson she would "beat" her and "kill" her had Jackson not been pregnant. This evidence clearly established appellant's feelings about Jackson and Jackson's relationship with Parks. Therefore, we find Parks' testimony regarding the voice mail messages did not affect the jury's ability to resolve the contested issues.

For these reasons, we affirm the judgment of the trial court.

Affirmed.

-