BENTON, J.,
concurring, in part, and dissenting, in part.
I concur in the holding that the trial judge did not err in overruling Gary Anthony Pryor’s objection to the admission of his wife’s preliminary hearing testimony. I also agree that the trial judge did not abuse his discretion in permitting the prosecutor and a witness to reenact the wife’s testimony by question and answer at trial. I dissent, however, from the portion of the opinion upholding the abduction conviction.
*11 I. Spousal Testimony
Without any objection by Pryor or his wife, Pryor’s -wife testified for the Commonwealth at the preliminary hearing that Pryor strangled Lisa Johnson. Only during cross-examination by Pryor’s attorney was she asked to explain the sequence of events. She then testified for the first time that Pryor asked her to retrieve tape, he taped Johnson’s wrists, and he rose to obtain a plastic bag to suffocate Johnson. During this cross-examination, Pryor’s wife testified about statements Pryor made to her as these events were occurring.
Citing Code § 19.2-271.2, Pryor’s attorney contends on appeal that the trial judge erred in admitting the wife’s preliminary hearing testimony because “the wife exercised her right ... to not testify against the husband.” In essence, he argues that Pryor’s wife invoked her testimonial privilege not to be compelled to testify against her husband. Pryor’s attorney did not argue at trial and does not argue on appeal that her testimony should have been barred by the interspousal confidential communication privilege recognized in Code § 19.2-271.2, which incorporated Code § 8.01-398. Interspousal confidential communication privilege is a separate, distinct privilege created by the statute. See Church v. Commonwealth, 230 Va. 208, 213-15, 335 S.E.2d 823, 826-27 (1985). For this reason, I concur in the ruling that the trial judge did not err in overruling the objection that was articulated by Pryor’s attorney at trial.
II. Abduction
Pryor argues on appeal that his detention of Johnson was not separate and apart from the detention employed in the act causing the homicide. I disagree with the majority’s conclusion that the holding in Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985), cannot apply when a defendant is charged with abduction coupled with a homicide.
Pryor’s wife’s testimony did not establish that the time sequence of these events was lengthy or that Pryor moved any significant distance beyond Johnson’s body in obtaining the *12 bag. The absence of those facts is critical because in Brown the Supreme Court
h[e]ld ... that one accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.
230 Va. at 314, 337 S.E.2d at 713-14. The Supreme Court further noted that “other courts follow a similar rule,” and it cited Iowa v. Folck, 325 N.W.2d 368 (Iowa 1982), as an example. Brown, 230 Va. at 314, 337 S.E.2d at 714. Significantly, the Iowa Supreme Court noted in Folck that, when a defendant commits a criminal act, “not every incidental confinement or every trivial movement from one place to another warrants a kidnapping conviction,” and it enumerated factors to be used in determining whether a separate abduction occurred. Folck, 325 N.W.2d at 371.
In a recent decision, we analyzed a series of Virginia cases that applied the Brown holding and concluded that there are four “factors Virginia courts have employed on a case-by-case basis in determining whether an abduction is incidental to another crime.” Hoyt v. Commonwealth, 44 Va.App. 489, 495, 605 S.E.2d 755, 757-58 (2004). Those factors, stated in summary fashion, are:
“(1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.”
Id. at 494, 605 S.E.2d at 757 (quoting Government of Virgin Islands v. Berry, 604 F.2d 221, 227 (3d Cir.1979)). These factors are not far removed from those cited in Folck, the case *13 our Supreme Court referenced as applying a rule similar to that adopted in the Brown holding.
Applied to this case, the Brown holding and our distillation of the four factors lead to the conclusion that Pryor’s detention of Jackson was merely incidental to the restraint employed by Pryor in the commission of the homicide.
First, the duration of Pryor’s detention of Johnson and of the other events connected to the detention were not shown to be significant. The evidence proved that Pryor and Johnson argued about money Johnson owed the Pryors for drugs she consumed. Johnson said to Pryor, ‘"You can kill me if you want I’m not going to pay you.” During the argument, Pryor fell upon Johnson when she tripped at “the corner of the bar ... the counter.” There, he tied her and then retrieved a bag from the cabinet and “smothered” her. No evidence proved Pryor moved Johnson or that he moved any significant distance in obtaining the bag to suffocate her. No evidence proved that any lengthy period of time occurred between the tying and the asphyxiation. Indeed, the evidence suggests that Pryor smothered Johnson immediately after tying her. In addition, testimony by the assistant medical examiner proved that the “very high level” of the controlled substance Fentanyl in Johnson’s system would have caused her to have “serious problems” breathing even without any contact with Pryor.
Second, the detention occurred during the argument and struggle that culminated in the homicide. No evidence established that the detention was an act that occurred separately from the act of the homicide. Both the detention and the homicide flowed from the argument in a continuous sequence.
Third, the detention was the mode of action that facilitated the homicide. It was inherently a part of the method of the homicide that was committed. The tying of Johnson was done incidental to and in furtherance of Pryor suffocating Johnson. See Johnson v. Commonwealth, 221 Va. 872, 879, 275 S.E.2d 592, 596-97 (1981) (reversing an abduction conviction because the evidence proved that a defendant who held a woman while *14 committing an assault and battery committed this act in furtherance of sexual advances and the detention was merely incidental to that offense). Here, Pryor could not have suffocated Johnson without detaining her, and he only moved a trivial distance in obtaining the bag.
Fourth, the detention did not create a significant danger to Johnson that was independent of the danger posed by the homicide. In Hoyt, this Court held that a detention lasting five minutes and moving the victim ten feet was slight and, thus, the defendant could not be convicted of abduction as well as the underlying felony. 44 Va.App. at 493, 605 S.E.2d at 757. In this case, the continuity of the acts and the absence of evidence that a significant lapse of time occurred between the acts negate the notion that the detention posed a significant, independent danger to Johnson.
As the Supreme Court’s holding in Brown suggests, the dispositive issue is whether the detention was “merely incidental to ... the restraint employed in the commission of the other ciime.” 230 Va. at 314, 337 S.E.2d at 714. In Hoyt, we observed that
the Supreme Court of Maryland ... noted that “a majority of courts ... now hold that ‘kidnapping statutes do not apply to unlawful confinements or movements incidental to the commission of other felonies’ ” [and the Maryland court] recognized that a literal reading of abduction and kidnapping statutes would “overrun other crimes, such as robbery, rape, and assault.”
44 Va.App. at 493, 605 S.E.2d at 757 (quoting State v. Stouffer, 352 Md. 97, 721 A.2d 207, 212 (1998) (quoting Frank J. Wozniak, Annotation, Seizure or Detention for Purpose of Committing Rape, Robbery, or Other Offense as Constituting Separate Crime of Kidnapping, 39 A.L.R.5th 283, 356 (1996))). This view is consistent with the holding in Brown.
Relying on footnote 11 in Powell v. Commonwealth, 261 Va. 512, 541 n. 11, 552 S.E.2d 344, 360 n. 11 (2001), the majority opinion asserts that the Supreme Court of Virginia has summarily dismissed the contention that the Brown principle *15 applies to an abduction coupled with a homicide. This footnote, however, is merely dicta because the abduction charge in Powell did not arise in connection with a homicide, and this footnote has never been relied upon by the Supreme Court or any other court. Indeed, as the following passage demonstrates, the abduction in Powell was not incidental to the restraint employed in any other offense:
Here, there is sufficient evidence to support the finding of the jury that Powell used greater restraint than was necessary to commit rape. First, Powell ordered Kristie to go to a more secluded part of the home prior to the rape. Although Powell did not display a weapon to her at that time, it is clear under the circumstances that Kristie was in reasonable fear for her life having just discovered her sister’s lifeless body and being aware that Powell was usually armed. Moreover, after the rape was completed, Powell bound Kristie and left her for some time before returning to attempt to kill her. This restraint clearly exceeded that necessary to accomplish the rape. Accordingly, we hold that the trial court did not err in failing to strike the evidence as to the charge of abduction.
Id. at 541, 552 S.E.2d at 360 (emphasis added) (citations and footnote omitted).
I also disagree with the majority opinion’s conclusion that the Supreme Court held in Jerman v. Dir., Dept. of Corrections, 267 Va. 432, 593 S.E.2d 255 (2004), that abductions that immediately preceded and followed a homicide “cannot, as a matter of law, be ‘inherent in the act of murdering.’ ” In Jerman, the Supreme Court noted that two separate detentions occurred apart from any that may have occurred during the assault that led to Rhatigan’s later death in a hospital.
The first abduction was accomplished through asportation by deception, which is proscribed by Code § 18.2-47. Panko picked Rhatigan up and drove him to her house on the pretext that some of her friends were there and they “all wanted to trip.” She did not disclose to Rhatigan the fact that Jerman, Bohn, and Joe were awaiting him with baseball bats____
*16 The second abduction occurred [after the assault] when Bohn and Joe carried Rhatigan’s body out of the house, through the backyard to the fence, and then tossed him over the fence.
267 Va. at 439-40, 593 S.E.2d at 259. In view of these facts, the Supreme Court held that “the evidence in this case proved abduction by deception before the assault and abduction by force after the assault. Neither involved the restraint or force inherent in the act of murdering Rhatigan.” Id. at 440, 593 S.E.2d at 260.
Simply put, the evidence in this case proved Pryor’s detention of Johnson was incidental to the act of suffocating Johnson. In other words, the detention was not “remote in terms of time and distance” from the homicide and was not, “in terms of quality and quantity, ... separate and apart” from the restraint employed in the suffocation of Johnson. Brown, 230 Va. at 314, 337 S.E.2d at 714. For these reasons, I would reverse the abduction conviction.